J. W. GASKINS et al. v. IVEY WILLIAMS et al.
Appellants.

Division Two, July 1, 1911.

1. **DEDICATION: For Court House Purposes: Exclusive.** A dedication on a duly recorded plat of a town, by the owners of land, of a certain block to the county "for court house purposes" was, under the statute, a dedication for that purpose and no other; and the county thereafter held the block in trust for court house purposes, and for no other use or purpose, public or private.

2. ————: ————: **Impossible Use: Abandonment.** Property unconditionally dedicated to a particular public use reverts to the original owner when the execution of the use becomes impossible. And by an impossible use is not meant only the utter physical impossibility of the use prescribed, but a complete abandonment of that use due to a present impossibility of exercising it.

3. ————: ————: ————: **Delay.** Mere delay in making use of the property dedicated to a specific public purpose will not work a reversion if the specific use will come in time; but where the delay is equivalent to a complete abandonment it will work a reversion.

4. ————: ————: **Location of a Court House Elsewhere.** Where the owners of land laid out and platted a town and on the recorded plat dedicated a block to "court house purposes," it being at that time generally believed that the county seat would be located at that place, but by a vote of the people it was located elsewhere, and the county has made no attempt to use it for such purpose, and the county court, by an order equivalent to a declaration of complete abandonment, has declared the block will not be used for that purpose, the use is impossible of execution, and the property reverts to the original donors or their heirs.

5. ————: ————: **Deed to Donors Ordered by County Court.** An order by the county reciting that since the dedication of a block in a new town for court house purposes the county seat had been permanently located at another place and that the land cannot be used for that purpose, and appointing a commissioner to convey the property to the donors, and the deed of the commissioner in pursuance thereof, are void. But if the pleadings are sufficient to support a decree declaring a reversion to the donors on account of the impossibility of executing the use, such decree will be entered.

Appeal from Pemiscot Circuit Court.— *Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED (*with directions*).

*G. G. Shepard, Sam J. Corbett* and *Vance J. Higgs* for appellant.

(1) The plat shows on its face that it was not a gift to the county of the land in question, but a conditional offer to give to the county, the condition being that the county use the land for court house purposes, that is,, place a court house on this land, and until the offer was accepted by the county on the terms on which it was offered, the title did not pass to the county. Landis v. Hamilton, 77 Mo. 555; Bauman v. Boeckler, 119 Mo. 189; Kemper v. Collins, 97 Mo. 644; Baker v. Vanderburg, 99 Mo. 378; Miller v. McCaleb, 208 Mo. 562. (2) The owners of the land had the right to name the terms on which they would part with the title, and the fee did not pass until the terms named by them were complied with, which was the county using the property for court house purposes. It was left to the option of the county as to whether it would, or would not accept the offer; it chose to reject, and not accept the offer. Baker v. Vanderburg, 99 Mo. 378; Kemper v. Collins, 97 Mo. 644; Ca npbell v. Kansas City, 102 Mo. 326; Rosenberger v. Miller, 61 Mo. App. 426; Bauman v. Boeckler, 119 Mo. 189. (3) Nothing more than a base, qualified, or conditional fee passed to the county,, which was defeated when the county failed to comply with the conditions of the grant. Tebow v. Dougherty, 205 Mo. 315. (4) When the county failed to use the property for the purpose for which it was given, the fee reverted to the donors. Campbell v. Kansas City, 102 Mo. 326; Robbins v. White, 42 So. (Fla.) 841. (5) If the fee simple title vested in the county at the time the plat was filed, then the county had the right to dispose of said property when it thought

it was to its interest to do so, and the commissioners deed to these defendants vested the title in them. Sec. 903, R. S. 1899; Simpson v. County, 173 Mo. 421. We do not claim that the title passed to the county at the time the plat was filed, or at any time, but we do claim, that if the title did so pass, then the commissioners deed vested the title in these defendants. (6) Non-user of land given for a certain purpose for the same length of time as would give title by limitation gives the title back to the original grantor. State v. Young, 27 Mo. 259; State v. Culver, 65 Mo. 609.

*J. R. Brewer* for respondent.

(1) The dedication was a statutory dedication and not a common law dedication and conveyed the whole fee, and there was nothing left in the dedicators to revert to them or their heirs, even if the county seat was afterwards located at Caruthersville. Reid v. Board of Education, 73 Mo. 295; Brown v. Carthage, 128 Mo. 17; Buschman v. St. Louis, 121 Mo. 536. (2) No acceptance by the county was necessary, and the dedication was complete by the recording the plat, and was irrevocable. Reid v. Board of Education, supra; Buschmann v. St. Louis, supra. (3) The dedication of block 29 for court house purposes was a dedication in trust and the county court of Pemiscot county could not lawfully convey or authorize its commissioner to convey this land as by his deed as such commissioner. Regents v. Painter, 102 Mo. 471. (4) The fact that the county of Pemiscot has failed to use said block 29 for a court house does not make the dedication a conditional one or a base fee. Reid v. Board of Education, supra.

FERRISS, J.—In 1895, Granville M. Hayes and other owners of certain lands in Pemiscot county caused said lands to be surveyed and laid off into town lots, establishing the town of Gayoso City, now Hayti, in said county. Said owners caused a plat to be made,

designating thereon the streets, alleys, blocks and lots; among others, a block known as Block 29, which said block, as it appeared on said plat, had inscribed thereon the following: "Dedicated to Pemiscot county for court house purposes." The following indorsement was placed on the plat and signed by the owners: "We, the undersigned, hereby declare the above to be a true and correct plat of Gayoso City, and forever dedicate to the public the streets therein named. We also dedicate and give to Pemiscot county, for court house purposes, block 29, and for jail and calaboose purposes, lot 5, block 43. We also dedicate for public school purposes, block 34. Witness our hands and seals January 22d, 1895." This plat was duly acknowledged on the 24th day of January, 1895, before the clerk of the circuit court, and on the next day was filed for record.

It is admitted that at the time this dedication was made the county seat question was in agitation; that it was known that it would have to be changed, but not known where it would be located.

The evidence shows that it was the impression of the owners of this ground that the county seat would be located in the new town of Gayoso City, sought to be established by this dedication, and that block 29 was dedicated to the county for courthouse purposes, in the belief and with the expectation that the county seat would be so located. It appears that some lots were purchased in this new town, and adjacent to block 29, in the belief that the courthouse was to come there. It does not appear that any sales were made upon representations by the dedicators as to the future use of the block. It seems to have been the common impression that the county seat would be located in that town. As a matter of fact, the county seat was not located at Hayti (Gayoso City), but was located at Caruthersville.

On April 1, 1901, the county court of Pemiscot county made an order appointing a commissioner, and

directing him to execute a deed to said block 29, and lot
5 in block 43, to the legal heirs of the original dedicators,
conveying all the right, title and interest of Pemiscot
county therein. This order recited that, "Whereas since
the dedication to said county, the county seat thereof
has been, by vote regularly had and carried and by
legal procedure regularly had, permanently located at
Caruthersville, in said county, and the parcels of land
cannot be used by said Pemiscot county for the purposes
and use for which the same were dedicated by said
Granville M. Hayes and others, and the title in equity in
and to said land is of right and ought to be in the
parties named, or their legal heirs," etc. Pursuant to
this order, the commissioner appointed by the court
executed his deed to the heirs of G. M. Hayes and the
other original owners, relinquishing the land in ques-
tion. The deed was filed for record on April 13, 1903,
and recites substantially the same clause above quoted
from the county court's order; but states further that
"the purpose for which the same was set apart and
dedicated by the grantors aforesaid has been thus and
thereby rendered impossible." The record fails to show
that any use has been made of this block 29 by anybody,
and is very barren of testimony showing what has taken
place so far as the settlement of the city of Hayti is
concerned. It does show that a few lots were sold, and
two or three buildings erected. The above-mentioned
order of the county court was made pursuant to a
petition filed in that court by the heirs of the original
owners. It appears that the city of Hayti subsequently
instituted condemnation proceedings against the de-
fendants as owners of this property, and procured judg-
ment, but failing to take the property and pay the com-
pensation awarded, suit was brought by these defend-
ants to divest the title out of the city of Hayti to this
block which the city claimed through said condemna-
nation proceedings; that this suit by the heirs was
prosecuted to final judgment, and a decree was entered

divesting the title out of the city of Hayti and vesting title in the defendants in this suit. It also appears from the original petition filed in this case, and which was put in evidence by the defendants, that these defendants filed a partition suit, and that an order of sale was made; but we infer that that order has never been carried out, and that the partition suit was interrupted and suspended by this present proceeding.

This proceeding was instituted September 20, 1905, by a petition in which the plaintiffs claim an equitable interest in and a right to use said block 29. The petition sets out the dedication referred to above, and alleges that lots had been sold relying upon such dedication; sets out the fact of the making of the commissioner's deed in behalf of the county to the defendants referred to above; sets out the partition suit; charges that block 29 is about to be sold and used for other purposes than that for which it was dedicated, and prays the court to determine the estate, title and interest of the parties respectively in said real estate; to set aside the commissioner's deed aforesaid, and to decree and adjudge that the defendants have no claim or title to said block, other than an interest in common with the public, and that they be debarred from asserting any private right or ownership, and for other and further relief. On December 12, 1905, an amended petition was filed by these plaintiffs, in which they state that they sue for themselves and others similarly situated, as tax-paying citizens of Pemiscot county. The amended petition sets out the dedication aforesaid, the order of the county court directing its commissioner to quit-claim the property to defendants, and the making of such deed by the commissioner, charges that the making of said deed was in excess of the power of the county court, and a violation of the trust created by the dedication, and prays the court to declare the order of the county court aforesaid and said deed to be void and of no effect, that the title in and to said land be

divested out of the defendants and vested in Pemiscot county, as trustee, that the nature of the trust be declared, and for further relief.

The answer of defendants denies each and every allegation not admitted or specifically pleaded to; admits that the dedication was conditioned that said courthouse should be moved to Hayti in 1896; admits the execution of the deed by the commissioner; avers that the county court never accepted the dedication, nor exercised any right over said land as trustee or otherwise; that the land has never been used for courthouse purposes or any other public purpose; charges the institution of the condemnation proceedings above referred to, failure of the city to pay the award, and the successful suit by defendants to divest the title out of the city of Hayti; charges laches on the part of plaintiffs, and estoppel by reason of their knowledge of the proceedings above referred to; also pleads that the former suits between the city of Hayti and defendants are *res adjudicata*.

It further appears that upon the trial of this case in the circuit court, after all the evidence for plaintiffs and part of the evidence for the defendants had been taken, the plaintiffs amended their amended petition, but we are unable to determine from the record in what respect said petition was amended. The reference is to the pages and paragraphs of the petition itself. As these pages do not correspond with the pages of the record nor with the pages of the printed abstract, it is impossible for us to determine what matter was stricken out, and we will therefore consider the case upon the amended petition as it appears in the abstract. The amended petition is directed primarily to the commissioner's deed, executed pursuant to the order of the county court, releasing all claims of the county in the block in controversy to the defendants, and prays the cancellation of that deed. There is, however, a further prayer that the

court declare the nature of the trust by which Pemiscot county holds the lands, and a prayer for further relief.

The defendants pray the court to declare that the right, title and interest in and to said block is in the defendants, and for further relief.

The court, in its judgment, finds the dedication as above stated, and finds and declares that the order of the county court directing the commissioner to make the deed, and the deed itself, were in violation of the trust imposed on the county by the dedication. It was ordered and decreed that said order of the county court and the deed by said commissioner be declared null and void, and that whatever title the heirs of the original donors acquired by said deed be divested out of them and be vested in the county of Pemiscot for courthouse purposes.

The record shows that this case was tried in what might be called a very sketchy manner. The evidence is meager, but enough appears to show substantially that this dedication for courthouse purposes was made; that the entire community expected the county seat to be established at this point; that, failing to secure the county seat, the county court regarded the equitable title as in the defendants, and that the purpose for which the dedication was made had become impossible of realization; that the county had never attempted in any way to use this block, and claimed no right to it; that subsequent legal proceedings, to which, however, neither the county nor these plaintiffs were parties, recognized the ownership in these defendants. It also appears that the county seat has been established at Caruthersville, and, so far as present intentions go, is permanently located there.

I.   If we should content ourselves with simply deciding whether or not the deed from the commissioner, upon the order of the county court, to the defendants is a valid instrument, divesting all right, title and interest out of the county, we would have no hesitancy in hold-

ing that the county court had no authority to order said deed, and that such deed is without force or effect. This block was not owned by the county in fee absolute, but was held in trust for a specific use. Therefore, the statute and decisions referred to by the defendants, authorizing such deed, do not apply. If, however, we were simply to decide this question, it would leave the real question in dispute to be settled by further litigation. It is our desire to put an end to litigation whenever we may properly do so. We think the pleadings are broad enough to submit the substantial question as to the present ownership of this block of ground, and we shall proceed to consider such question.

The dedication in this case was made under chapter 97, Revised Statutes 1909. Section 10294 of that chapter provides that a duly acknowledged, certified and recorded plat "shall be a sufficient conveyance to vest the fee of such parcels of land as are therein named, described or intended for public uses in such city, town or village, when incorporated, in trust and for the uses therein named, expressed or intended, and for no other use or purpose."

According to the designation in the plat in this case, block 29 was dedicated to Pemiscot county for courthouse purposes. It is so named, expressed and intended on the face of the plat. Under the statute, therefore, the county held such block in trust for courthouse purposes, and for no other use or purpose. The effect is the same, taking the plat and statute together, as if the plat and accompanying dedicatory words had provided in terms that this block should be used for courthouse purposes, and for no other use or purpose. This statute has been construed by this court and held to limit the use to the use expressed in the dedication. The county cannot use the land for any other public use than the one expressed, and it has no power, of course, to divert the land to any private use. [Board of Regents v. Painter, 102 Mo. l. c. 470; Price v.

Thompson, 48 Mo. l. c. 365; Cummings v. City of St. Louis, 90 Mo. l. c. 263; Thomas v. Hunt, 134 Mo. l. c. 402; Snoddy v. Bolen, 122 Mo. l. c. 491.]

Counsel for respondents cites and strongly relies upon Reid v. Board of Education, 73 Mo. 295. In that case the block in controversy had written on it in the plat the words "public square." Under the head of "references," number 8, on the plat, appeared the following: "Block number 9 declared public property for the purpose of containing the courthouse, should the town be selected for county seat." The quitclaim deed, on the reverse side of the plat, after mentioning streets and alleys, says "also block number 9, according to the within plat or plan of the town which shall be and remain the property of said county of Lewis for the purposes aforesaid forever." The court held that, considering all that appeared on the face as well as the reverse side of the plat, the block, nine, was dedicated to general public use. In that case it was a question of construction to determine what use was specified. The court properly construed the plat to dedicate the block to public use. In the case at bar there is no such question. It is clear that the use was specified and limited to courthouse purposes. It is equally clear that under the statutes and the decisions of this court, the county court could not hold the land for a different use.

The real question in this case is, when, if at all, does the land conveyed to the county by the statutory dedication revert to the donor. First, does it revert under any circumstances? Dillon on Municipal Corporations (4 Ed.) vol. 2, section 653, lays down this rule: "Property unconditionally dedicated to public use or to a particular use does not revert to the original owner except where the execution of the use becomes impossible. If the dedicated property be appropriated to an unauthorized use, equity will cause the trust to be

observed or the obstructions removed." This rule
has been approved by this court.

In Goode v. St. Louis, 113 Mo. 257, SHERWOOD, P.
J., cites and approves this rule, but holds that upon the
facts in the case, which showed that the specified use
was feasible, there was no impossibility of its exer-
cise; that in case of a nuisance the city could be
compelled to comply with the terms of the dedication
and in such case there would be no reversion. Here we
are dealing not with a question of misuse, but with the
question of the impossibility of execution, or abandon-
ment of the use. In Campbell v. City of Kansas, 102
Mo. 326, a certain square in the plat had marked there-
on "donated for graveyard." It was so used for years.
Subsequently, by ordinance, it was discontinued as a
graveyard, the remains of those buried there removed,
and the place converted into a park. The court held
that the use was not perpetual, and that as the
original use had terminated, the fee vested in
the heirs of the original donors, free from the use.
Judge SHERWOOD, commenting on this case in Goode v.
St. Louis, supra, says that by the action of the munici-
pal authorities "the execution of the use had become
impossible." Yet it was still *physically* possible to re-
store this park to its original specified use.

If, as this court has decided, the complete aban-
donment of a use, such abandonment being ordered by
lawful authority, is equivalent to impossibility of use, it
must follow that when the legal situation is such that
the county cannot begin the specified use, such use
becomes impossible of execution.

It is quite true, as contended for by the learned
counsel for respondents, that mere delay in the use
will not work a reversion. The cases cited to support
this contention, however, present facts which show
that the specified use is certain to come in time, and
will be essential to the natural and harmonious devel-
opment of the city or town. There is a difference be-

tween delay and total failure. The case of City of St. Louis v. Mo. Pac. Ry., 114 Mo. 13, cited by respondents, presents facts showing that the city owned the property in controversy for a street which, when improved, would effect a continuation of the street on the river front. It was properly held that mere delay in the improvement, certain to come some time in the natural growth of the city, did not affect the city's rights, and that the time when the improvement should be made was a mere matter of discretion with the city authorities.

The vital question, therefore, is, has it become impossible to use this land for the purpose expressed by the donors in the dedication? The cases cited above refer to situations where there has been an abandonment of the specified use, such abandonment being held to be equivalent to an impossibility. Here we have a case where such use has never been effected or attempted. We do not doubt that when this plat was filed the fee in block 29 passed to the county in trust, to be used for courthouse purposes, and so long as the property might be so used the fee remained in the county as such trustee. It is not, however, as respondents contend, an absolute, unqualified ownership in the county. It cannot be such if, as stated above, the property may revert by a complete abandonment or impossibility of use. When this plat was filed, there was what appeared to the owners of the ground, and to the community, every indication that the county seat would be there located, and, of course, the dedication was made in consideration of such expected location; but when the county seat was permanently located at Caruthersville, did it not become impossible for the county to execute the trust by using this block for courthouse purposes? We think it did. It is to be presumed that the county seat will remain where it is.

But even if this presumption should fail, there is no ground suggested to support any reasonable expecta-

tion that in case the county seat is changed in the future it will go to Hayti City. The possibility that the block may be used at some time in the future for courthouse purposes is too remote to be regarded as a substantial basis for the trust to rest upon. As a practical proposition, the execution of this trust has become impossible, and, under the authorities above cited, the land reverts to the heirs of the original donors.

We hold that the county court could not divest itself of the trust by a deed back to the heirs. But the fact, that the authorities made the order, with the recitals above quoted, shows that they regarded the county seat as permanently located at Caruthersville, and that the trust thereby became impossible of execution.

Under all the facts in this case as shown by the record, we hold the execution of the use impressed upon the land by the dedication to be impossible as that term should properly be construed.

The finding of the trial court that the order of the county court, and the deed made pursuant thereto, were null and void, was correct; but if the judgment of that court as a whole should be affirmed, it would leave the matter, as we stated at the beginning of this opinion, still open for litigation. In order to establish now, finally, the right of ownership in said block 29, the judgment is reversed and the cause remanded, with directions to the circuit court to enter a decree vesting the title to said block 29 in the defendants.

*Kennish*, *P. J.*, and *Brown*, *J.*, concur.