**LAND CLEARANCE FOR REDEVELOP-MENT AUTHORITY OF the CITY OF ST. JOSEPH, Missouri, Respondent,**

v.

**The CITY OF ST. JOSEPH, Missouri, Joseph Robidoux and Angelique Robidoux, husband and wife, and their unknown heirs, grantees, successors and assigns, Clifton Hurst, Collector of Revenue for Buchanan County, and Merrill L. Haney, acting Director of Finance for the City of St. Joseph, Missouri, Appellants.**

**Nos. KCD 28676, 28706, 28714 and 28727.**

Missouri Court of Appeals,
Kansas City District.

Dec. 5, 1977.

Motion for Rehearing and/or Transfer Denied Dec. 27, 1977.

Application to Transfer Denied
Feb. 8, 1978.

Morton, Reed & Counts, Ronald Reed, Jr., Stephen J. Briggs, St. Joseph, for appellants.

Gary A. Fenner, St. Joseph, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Consolidated appeals from judgment which distributed an $86,650 award for the taking in condemnation of a described area denominated "Market Square" in St. Joseph, Missouri: "To the City of St. Joseph, Missouri, for the improvements on the land the sum of $44,150.00. To the heirs of Joseph Robidoux the value of the land in the sum of $42,500.00."

Appellants Robidoux heirs (28,676, 28,714, 28,727) contend they should receive all the award, asserting: (I) "Joseph Robidoux's delineation on the original plat [of St. Joseph] of an area called 'Market Square' did not convey a title to the public in fee simple, but rather a fee in trust for the named public purpose of a market square such that on abandonment of that purpose by the City of St. Joseph, the land reverts to his heirs"; (II) "land dedicated to a public use reverts to the dedicator or his heirs where, as here, the dedicated purpose becomes impossible or so highly improbable as to be practically impossible"; (III) "Joseph Robidoux's intent * * * was not sufficiently clear and precise to constitute a dedication to public use forever and that intent is controlling"; (IV) the City as "one who has less than fee simple title to property and places improvements thereon has no right to reimbursement from the reversionary interests for said improvements."

Appellant City (28,706) contends it should receive all the award, asserting that when land held for public purposes is condemned the governmental entity holding title on behalf of the public is the party damaged. Alternatively, the City contends that if it does not have an interest in the value of the land, it is entitled to the value of its building, asserting it would be inequitable to allow the heirs of Joseph Robidoux to benefit from the City's good faith effort to comply with the dedication by its improvement of the land.

The question is whether the Robidoux heirs as holders of a possibility of reverter to title to real estate dedicated by their ancestor to public use in 1843 are entitled to any share in a condemnation award for a taking of the property in 1973; or whether appellant City to whom the property was dedicated is entitled to the entire award. As a matter of law applicable to undisputed facts, the City prevails to the exclusion of the heirs. Reversed and remanded.

In August, 1843, Joseph Robidoux, sole proprietor of the town "Saint Joseph," filed a dedication and plat, duly acknowledged, certified and recorded, of the town by which he did "grant allot and convey for public uses all streets and alleys by the names and of the width and extent that are set forth." Blocks, lots, streets, and alleys were numbered, named, and otherwise shown; the west half of Block 31 was designated "Market Square."

"Market Square" has a history of use for market purposes. On January 10, 1873, the City, by ordinance, appropriated $375 "towards completing the Market house in addition to" $2500 "heretofore appropriated for building the same." Minutes of the city council and an ordinance of April 26, 1873, reflect further interest in construction of the "Central Market House." On July 12, 1938, the City, by ordinance, authorized the issuance and sale, subject to public election, of $42,000 in general obligation bonds "for the purpose of procuring funds to erect a New Market House in Market Square." On September 16, 1938, the City, by ordinance, recognized a favorable election result, and ordered sale of the bonds. On November 7, 1938, the City, by ordinance, authorized the Board of Public Works to enter into a contract "for the taking down of the old Market House in Market Square and for the construction of a new Market House on said site."

On August 10, 1973, Land Clearance for Redevelopment Authority petitioned to condemn, as amended, "The west half of Block Thirty-one (31), Original Town, now City of

St. Joseph * * * noted as Market Square in the dedication plat." Commissioners were appointed and they reported damages for the taking at $86,650. The amount of the award was paid into court "for the use of * * * City of St. Joseph, * * * Joseph Robidoux and Angelique Robidoux, * * * and their unknown heirs, grantees, successors and assigns," and on November 8, 1973, said condemnation was confirmed.

No exceptions to the award were filed, and the City and various heirs and representatives of the heirs of Joseph Robidoux moved for apportionment of the award.

Evidence was adduced on the motions to apportion the award. Arnold Coppaken, a market master at City Market in Kansas City, Frederick Waris, formerly in the fruit and vegetable business adjacent to Market Square in St. Joseph, and Eric Scott, city administrator of St. Joseph, qualified as experts. Mr. Coppaken and Mr. Waris were both familiar with prior market operation in St. Joseph. Mr. Scott, the city administrator, had general knowledge of public market operations. In their opinions, a public market in the nature of a market square or farmers' market in St. Joseph would be beneficial, successful and feasible. Fred Eder, a realtor and one of the condemnation commissioners, stated that he attributed $44,156 to the building on Market Square, and $42,500 for the land underlying the improvement.

■ Sections 445.010, et seq., RSMo 1969, and their predecessors as early as 1835, provide the method of dedication of real estate to public use. The maps or plats utilized in accordance with the statutory scheme are "a sufficient conveyance to vest the fee of such parcels of land as are therein named, described or intended for public uses in such city, * * * in trust and for the uses therein named, expressed or intended, and for no other use or purpose." § 445.070.2 RSMo 1969. Under such provisions, Joseph Robidoux's plat of August, 1843, constitutes a valid dedication of the streets and other public places, particularly "Market Square," the subject of this pro-

ceeding. *City of California v. Burke*, 292 Mo. 466, 239 S.W. 830, 832 (1922); *Neil v. Independent Realty Co.*, 317 Mo. 1235, 298 S.W. 363, 370 (1927). Doubt or ambiguity, if any, in the intent of the dedicator and the meaning of his plat is properly construed against the dedicator under the long history of public use and expenditure of public funds in this case. *Goad v. Bennett*, 480 S.W.2d 77 (Mo.App.1972).

■ By the dedication the City of St. Joseph acquired not a fee simple absolute but a fee in trust to use the property for public purpose, or as sometimes said, an easement for public use. Such defeasible fee is burdened by possibility of reverter to the dedicator or his successors if the property is abandoned by the City. *Ginter v. City of Webster Groves*, 349 S.W.2d 895, 899 (Mo.1961); *Marks v. Bettendorf's, Inc.*, 337 S.W.2d 585, 593 (Mo.App.1960); *Roy F. Stamm Electric Co. v. Hamilton-Brown Shoe Co.*, 350 Mo. 1178, 171 S.W.2d 580, 582, 583 (banc 1943); *Gaskins v. Williams*, 235 Mo. 563, 139 S.W. 117 (1911); *State ex rel. State Highway Commission v. Johns*, 507 S.W.2d 75, 77 (Mo.App.1974); *Hand v. City of St. Louis*, 158 Mo. 204, 59 S.W. 92 (1900); *Neil v. Independent Realty Co., supra.*

The general rule governing this situation is stated, 29A C.J.S. Eminent Domain § 199, page 888:

"It is generally held that, although condemnation involves a termination of the use of the property on which the fee is limited and on which a possibility of reverter or right of re-entry would come into play, such taking does not operate to terminate the prior estate and entitle the owner of the possibility of reverter or right of re-entry to the compensation for the taking of the property. Rather, the compensation is to be paid to the owner of the defeasible fee without any allocation or apportionment to the holder of the reversion or right of re-entry on the ground that such interest is so remote and speculative as to be without present value. However, if the event on which the defeasible fee is to terminate is imminent or likely to occur within a reason-

ably short period of time, leaving out of consideration the eminent domain proceeding, then the award should be apportioned between the holder of the fee and the owner of the possibility of reverter or right of re-entry in accordance with the value of their respective interests."

Other texts support the foregoing proposition. See, e. g., 27 Am.Jur.2d Eminent Domain § 251, pp. 26–27; 2 Nichols on Eminent Domain 3 ed. § 5.221[1], pp. 5–73, 5–78; Restatement of the Law of Property, § 53, p. 187; Anno.: Condemnation Award—Right of Reverter, 144 A.L.R. 774n, 81 A.L.R.2d 570n.

*State v. Cooper*, 24 N.J. 261, 131 A.2d 756 (1957), presented an analogous situation. In 1851, a map of the property of Joseph Coyte was filed by which the property was divided into lots, part of which was designated "Public Square." The Public Square was devoted to public use for more than a century and the city maintained it as a public park. The property was condemned by the State Highway Commission and the heirs of the dedicator were denied any share in the condemnation award. The court stated:

"We are in accord with the individual appellants' position that the dedicated use of the area has not been continued by the State; it seems evident that the present use of the area as part of a limited access high-speed highway differs significantly from its former use as a local park. * * And we recognize, as they stress, that the judicial decisions have dealt generally with actual transfers by deed of defeasible estates * * * rather than with dedication by map which in our State involves the creation of public rights along with the retention of bare legal title. But we believe that the ultimate determination may not justly turn on metaphysical distinctions but must rest upon substantial realities. * * * When the State Highway Commissioner condemned, the possibility that there would be a reverter entitling the individual appellants to actual use and enjoyment had no apparent worth, nor did it then accrue * *, and while there was also a taking of the bare legal title, that interest would seem, in the absence of a showing of special factors, to have little transferable value for purposes of condemnation." 131 A.2d l. c. 763–764.

Similar statement of the law has been made in other jurisdictions. See e. g., *Romero v. Department of Public Works*, 17 Cal.2d 189, 109 P.2d 662, 665 (1941): "The authorities generally are to the effect that the owner of the possibility of a reverter prior to a breach of the condition is not entitled to compensation when the property is taken under the law of eminent domain. Such cases hold that the possibility of voluntary abandonment by non-user is so remote and improbable that it has no substantial value to be estimated in a condemnation proceeding." See also *Hamman v. City of Houston*, 362 S.W.2d 402, 405 (Tex.Civ. App.1962), "that where the grantee does not violate the terms of the trust so as to bring about a reverter, but the trust property is appropriated for other uses under the power of eminent domain, the award of damages resulting from the condemnation is decreed to the grantee * * *."

■ With respect to similar contention by the heirs, the argument has been advanced that inasmuch as the condemnation terminates the use to which property was to be put according to the condition, the estate of the grantee or its successors has been terminated and the reverter is no longer a mere possibility and is compensable in eminent domain. "However, the weight of authority does not support this view. The prevailing view is that there is no interval of time between the seizure of the estate of the grantee and the seizure of the rights of the grantor during which there could be a reverter of title to the latter, since at the moment of appropriation there as been no disuser by the former in breach of the condition." *Nichols, supra*, l. c. 5–73; and see, e. g., *First Reformed Dutch Church v. Croswell*, 210 App.Div. 294, 206 N.Y.S. 132 (1924), that the disuser in such circumstances is a consequence, not a cause, of loss of title by the grantee.

Nor have the heirs adduced any evidence to support their contention of an abandonment with resultant reverter. The only record here is that the City has appropriated public funds on two occasions, one as late as 1938, for construction of market houses on Market Square, and the last such building was on the premises at the time of this condemnation. In addition, the continuance of a public market in St. Joseph is shown to be beneficial, successful and feasible. Such circumstances show that the City possessed the fee for its trust purpose at the time of the taking, and are inimical to interest in the heirs by way of reverter. *Patrick v. Mississippi State Highway Commission,* 184 So.2d 850 (Miss.1966).

*Carmack v. United States,* 177 F.2d 463 (8th Cir. 1949), is close in point. The United States condemned land in Cape Girardeau, Missouri, for use as a United States post office, customhouse, and court building. The site was a city park upon which were located a courthouse, city library, and bandstand, the land having been conveyed to Cape Girardeau by deeds executed in 1807 and 1820 which limited the use to public purposes. The City was adjudged entitled to the entire award over a claim of the grantor's heirs. The court affirmed the lower court's determination, *United States v. Certain Land in City of Cape Girardeau,* 79 F.Supp. 558 (D.C.), that the deed to the city created a trust as to public use of the land, and that there was no violation of the trust by the city, because the taking by the federal government was by condemnation and not by voluntary conveyance so as to entitle the heirs of the grantor to the award.

Similarly, in *State ex rel. Sayers v. School District,* 79 Mo.App. 103 (1899), property was condemned by the school district which had been granted by deed jointly to the school and a church. The deed contained a condition that if the land should cease to be so used for a period of seven years, title would revert to the grantor. For a period of four years the property was not used for church purposes, after which the property was condemned by the school. The grantor contended he was entitled to an award for the taking. The court denied the grantor's contention because he had no title to the property at the time it was condemned but possessed only a "bare possibility of a reverter dependent upon the future conduct of the beneficial owners of the land, over whose action he had no control whatever. * * * As his title had not then accrued, it could not have been injuriously affected by that [condemnation] proceeding. Under the terms of his grant * * * the reverter could only take place upon the future abandonment by the grantees of the joint use of the property. It could not be affected by the institution of a suit to condemn his title prior to the happening of the contingency upon which it hinged." 79 Mo. App. l. c. 110.

Judgment reversed and cause remanded with directions to enter judgment to distribute the entire award of $86,650 to the City of St. Joseph, subject to allowances, if any, for fees and costs which may be taxable against these parties.

All concur.