[No. 15854.  Department One.  August 9, 1920.]

F. L. HOWATT, *Doing Business as Sunset Tire Company, Appellant,* v. F. S. CLARK *et al., Respondents.*[1]

PLEADING (59-1)—ANSWER—MATTER AVAILABLE UNDER GENERAL DENIAL.  In an action to recover the price of automobile tires, proof of an agreement between defendants and plaintiff's agent that the tires were to be left with defendants in storage for use of the trade in that part of the city was not the proving of an affirmative defense necessary to be pleaded as such, the only purpose being to show that the alleged sale contracts were never made.

SALES (6)—REQUISITES AND VALIDITY—PARTIES—PARTICIPATION AND RELATION.  An implied contract of purchase of automobile tires does not arise from the fact that defendants, under an agreement with plaintiff's agent, allowed him to deliver and leave the tires in storage with them with the privilege of sale and right to commissions on sales made by the agent to their customers as compensation for storage and services rendered, although the tires were billed to them in form indicating intended sales, and some of them were billed out to plaintiff's customers in form as sales from defendants, where defendants never assumed to deal with the tires as their own.

TRIAL (32)—REOPENING CASE—DISCRETION.  The denial of an application to reopen the case for further evidence is not an abuse of discretion, where the evidence tendered would not have changed the result.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered March 13, 1920, upon findings in favor of the defendants, in an action on contract, tried to the court.  Affirmed.

*Nelson R. Anderson,* for appellant.

*Hastings & Stedman,* for respondents.

PARKER, J.—The plaintiff seeks recovery from the defendants upon alleged sales of two lots of automobile tires which were delivered from his wholesale house in Seattle to their place of business in the southern part of the city in October, 1919.  Trial in the superior

[1]Reported in 192 Pac. 7.

court sitting without a jury resulted in findings and judgment in favor of the defendants, denying recovery, from which the plaintiff has appealed to this court.

The dealing and agreement under which the tires were delivered to respondents was had between respondents and one Dean, a salesman and agent of appellant, who was admittedly authorized not only to sell tires to the trade, but was also authorized to collect the purchase price therefor. The controversy here presented is more over the inferences to be drawn from the evidence than over the facts themselves, which are not seriously in dispute, and may be summarized as follows: In the spring of 1919, negotiations commenced between Dean and respondents, resulting in an agreement which was, in substance, that tires should be delivered to and left in storage with the respondents at their place of business, to accommodate the trade in that part of the city. Respondents were not to be considered as purchasing the tires from appellant upon delivery, or at any other time, except as to such of the tires as they actually made sales of to their own customers, which they were privileged to do, and upon making such sales, the tires so sold were to be paid for by respondents and be regarded as being then purchased by respondents from appellant. It was understood that, upon Dean making sales of tires to respondents' customers in that part of the city, delivery should be made from the tires in storage with respondents, and they were to have five per cent upon such sales, when collections were made therefor, as their compensation for storage, attending to sending the tires out, and keeping accounts of such sales. It seems to have been understood between Dean and respondents that the tires should be billed out to appellant's customers by respondents in form as sales from

respondents to such customers. Dean seems to have looked after the collections, as was contemplated by the agreement. Dean and respondents would have a settlement early in each month of the business of the preceding month, when respondents would pay for the tires they had sold, and also for such others on hand as they desired then to purchase for themselves, and at such settlements they received five per cent on the tires which had been delivered from the storage stock upon the sales made by Dean. It so happened that, at each monthly settlement up to and including September, there were seldom any of the tires of the previous months' deliveries from appellant to respondents left on hand, and that what few were so left on hand respondents then purchased and paid for, as they did with reference to tires sold to their customers. The business relations between respondents and appellant, represented by Dean, proceeded in this manner and settlements were made accordingly for the months of May to September, inclusive. All of the tires, including those here in controversy, were sent from appellant's wholesale house to respondents' place of business at the instance of Dean, and without any request or order therefor on the part of respondents

On October 7, Dean caused to be delivered from appellant's wholesale house to respondents' place of business fifty tires, respondents assuming on receiving them that the tires were sent under the same arrangement as those they had theretofore received. This was a much larger number of tires than had been sent them during any previous month. There was, at the same time, sent by appellant, and evidently received by respondents a day or so later, a bill for these tires, in form indicating an intended sale of the tires to respondents, specifying the wholesale price, which was

apparently the manner in which the former deliveries of tires had been charged, in form, by appellant against respondents. A few days later, respondents called up appellant's place of business and talked with Dean over the telephone, telling him they did not want so many tires on hand at their place of business, and asked him to take them away. Dean promised to do so, and a few days later came to respondents' place of business and caused the tires to be taken away by a transfer man whom he hired for that purpose. At Dean's request, respondents billed the fifty tires to one Minkov, as other tires had been billed to appellant's customers to whom Dean had sold them, as requested by Dean. This is the first lot of tires for the sale of which appellant seeks recovery. On October 18, Dean caused to be delivered from appellant's wholesale house to respondents' place of business another lot of fifty tires, respondents assuming in receiving them that the tires were sent under the same arrangement as those theretofore received. They were billed in the same manner as the first lot of tires here in question. Demand for payment having been made for these two lots of tires early in November, on November 5, 1919, respondents wrote to appellant as follows:

"'We beg to advise you that we have on hand fifty 30x3½ casings, which were sent to us under your invoice of October 18th, without our authority, either written or oral, are now on hand, subject to your disposition.

"We also have your statement of our account for the month of October, and beg to advise that other casings covered by these charges have been taken away upon instructions of your representative, having never been accepted by us as a purchase, and we are compelled to advise you that these charges should be cancelled.''

Respondents' dealings were wholly with Dean, appellant's representative. They never saw or had any talk with appellant until the latter part of October, at which time appellant claims that he made remarks to them such as would indicate his understanding that the tires were sold and not merely consigned to respondents, and that respondents then made no protest against such view of the matter. We think, however, the testimony of respondents is such as to call for the conclusion that there was nothing either said or done which would call for respondents at that time making any such protest, but that their letter of November 5, quoted above, was as prompt a protest against appellant's demand for payment as for a sale of the tires as the circumstances called for. This action was commenced on November 12.

Contention is made on appellant's behalf that respondents' defense is, in legal effect, an affirmative defense, and not having been pleaded as such, was unavailing to them. We do not think that the proving of the agreement between them and Dean as to the conditions under which they received the tires was the proving of an affirmative defense, in a legal sense. The only purpose of such proof was to show that the alleged sale contracts sued upon were never made. While this proof may be regarded as affirmative in form, it was, in fact, negative in effect, in that it tended to show that the alleged sale contracts were never, either expressly or impliedly, made. The proof was, therefore, admissible under the denials of the answer. *Puget Sound Iron Co. v. Worthington,* 2 Wash. Terr. 472, .7 Pac. 882, 886; *Peterson v. Seattle Traction Co.,* 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586; *Davidson Fruit Co. v. Produce Dist. Co.,* 74 Wash. 551,

134 Pac. 510; *Smith Sand & Gravel Co. v. Corbin,* 75 Wash. 635, 135 Pac. 472.

· The contentions made in appellant's behalf touching the merits proceed upon the theory that there were, in any event, implied contracts between appellant and respondents for the sale of these two lots of tires. Counsel invokes the rule as stated in 35 Cyc. 59, as follows:

"If one sends or delivers goods to another, under circumstances which indicate that a sale is intended, but no price is named, and the other uses or otherwise deals with them as his own, a sale for a reasonable price is implied. If the person sending or delivering the goods names a price, and the other deals with the goods as his own, a sale for the price named is implied."

As to the first lot of tires received by respondents on October 7, the only circumstances we regard as tending to show an intended sale therefor are the sending of the bill by appellant to respondents, not with the tires, but so that respondents received the bill thereafter, which bill was in form such as to indicate an intended sale by appellant at the wholesale price; and the billing of the tires by respondents to Minkov, at the request of Dean, when he took the tires away and delivered them to Minkov on October 17. As to the second lot of tires received by respondents on October 18, the only circumstance we regard as tending to show an intended sale therefor is the sending of the bill therefor by appellant to respondents, not with the tires, but so that respondents received the bill soon thereafter, which bill was in form such as to indicate an intended sale by appellant to respondents at the wholesale price. It is plain that respondents did not, · in any manner, deal with this second lot of tires as their own. They merely received them and let them

remain at their place, where appellant, as at all times, had been free to come and get them, as the judgment of the trial court expressly permitted him to do.

Assuming for the present that Dean was authorized, as appellant's salesman and agent, to make the agreement he made with respondents, it seems plain to us that the fact that the tires were billed by appellant to respondents in form indicating intended sales, and the fact that respondents billed the first lot of tires to Minkov, in form indicating a sale thereof, requested by Dean, under all the circumstances, does not call for the conclusion that there arose an implied contract for the sale of either of these lots of tires from appellant to respondents, since respondents did not assume to deal with the tires as their own so as to bind them as purchasers thereof from appellant—that is, did not assume to deal with the tires as their own, as between themselves and the appellant. Dean caused the tires to be brought to respondents' place of business without any order therefor on the part of respondents, caused the lot received October 7th to be taken away, respondents doing nothing with reference thereto except what Dean requested them to do, and doing nothing with reference to the lot received October 18th, save to allow them to remain at their place of business, under protest.

But counsel's argument seemingly proceeds largely upon the theory that Dean, as sales and collection agent for appellant, did not have authority to make such an agreement as he made with respondents relative to the storage and disposition of the tires. There may be substantial ground to rest such an argument upon, but even if that be so, we fail to see how, under the circumstances, that would sustain the contention that there arose an implied sale of these two lots of

tires from appellant to respondents. If Dean did not have authority to make such a contract, the fact still remains that he did not make a sale of these tires from appellant to respondents. So the question still remains, did respondents deal with the tires as their own in such manner that the law will imply a contract of purchase by them from the appellant? We think not. They simply allowed Dean to cause the tires to be brought to their place of business and allowed Dean to cause the first lot of tires to be taken away, the second lot still remaining at their place of business, over their protest. The billing of the tires by respondents to Minkov, if unexplained, would be a circumstance pointing rather strongly to the arising of an implied contract of sale between the appellant and respondents as to those tires; but, under the circumstances, we think such act on respondents' part, done at the request of Dean, is not sufficient to estop them from successfully asserting that an implied contract did not arise.

Appellant seeks to recover upon two or three other small items, but it is so plain from the record that respondents never received the goods so sought to be charged against them that we deem it sufficient to say, as to these items, that the appeal is wholly without merit.

Contention is made that the trial court erred in refusing to open the case for the production of further evidence by appellant. The record quite convinces us that the opening of the case and the receiving of the evidence so tendered would not have changed the result, and that, therefore, the court did not abuse its discretion in denying the application.

The judgment is affirmed.

HOLCOMB, C. J., MAIN, and MITCHELL, JJ., concur.