[No. 17030.  Department Two.  March 17, 1922.]

ZELMA LEVY *et al., as Administrators etc., Appellants,*
v. BARNEY SIMON, *Respondent.*[1]

JURY (4)—RIGHT TO TRIAL BY JURY—ACCOUNTING.  Where the pleadings show that the action involves a partnership and a large number of mutual accounts between the parties, undoubtedly requiring an accounting, a jury trial is properly denied.

WITNESSES (48-1) — TRANSACTIONS WITH DECEASED — WAIVER. Rem. Code, § 1211, excluding testimony of transactions with a deceased is waived, where administrators suing a surviving partner, introduced portions of the testimony of the defendant in a former proceeding to show contradictory statements; and they cannot object to defendant's introduction of the complete transcript for the purpose of reconciling his statements.

EVIDENCE (100)—SELF-SERVING DECLARATIONS—BY PERSONS SINCE DECEASED.  In an action by administrators for an accounting, self-serving letters and bank statements of the deceased in his own interest are inadmissible.

PLEADINGS (174)—ISSUES—GENERAL DENIAL.  In an action for a partnership accounting, under a general denial defendant may show that alleged moneys and goods furnished or forwarded were fully settled for or never furnished as claimed by plaintiff.

APPEAL (416)—REVIEW—FINDINGS—EQUITABLE ACTIONS.  Findings in an action for an accounting depending upon the credibility of an eye witness whom the trial judge had the advantage of seeing must be considered as based on that which enlightened him on the issues only, and not on incompetent evidence unworthy of belief.

Appeal from a judgment of the superior court for King county, Oswald, J., entered May 14, 1921, upon findings in favor of the defendant, in an action to recover property belonging to the estate of a decedent, tried to the court.  Affirmed.

*Stephen J. Chadwick* and *Walter B. Allen,* for appellants.

*Arthur C. Bannon,* for respondent.

[1]Reported in 205 Pac. 426.

Holcomb, J.—The complaint of appellant alleges:

That, during 1915, 1916, 1917 and 1918, the deceased, Louis Levy, furnished to respondent, at his instance and request, and made payments for respondent, and furnished and delivered to him goods, wares and merchandise of the reasonable value as shown in the attached items of account; that a list of such moneys and goods, with the dates on which they were furnished, is attached to the complaint, marked exhibit A, and made a part thereof, and that the interest on each item from the date thereof to the 10th day of March, 1920, at the rate of six per cent per annum, is also shown on the exhibit, in separate columns, making a total of principal of $118,315.22, and a total of interest on the items of account of $23,381.42, making a total indebtedness, including interest, of $141,696.64; that there are no credits or offsets against the amount alleged therein, other than the sum of $38,334.55, principal, and the sum of $9,295.58, interest at the rate of six per cent per annum upon each item thereof, figured from the date thereof to the 10th day of March, 1920, making a total of principal and interest of $47,640.12, to which respondent is entitled to credit. Appellant further alleged that, at the time of the death of Louis Levy, there was in his possession and under his control goods, wares and merchandise belonging to respondent, or in which he had an interest, which amounted to $27,093.47, and respondent has, by order of the superior court, been allowed a claim against the estate of Louis Levy for that sum, subject to any claim that may be due the estate from respondent, and appellants are willing to give credit upon the amount due the estate from respondent of the sum of $27,093.47, leaving a net balance due the estate, after allowing for that claim and offset, the sum of $66,973.04, for which

sum the plaintiffs ask judgment, with interest from March 10 until paid.

To the complaint is attached exhibits A and B, being the itemized list of indebtedness and credits, showing the date, nature, time paid, principal and interest. Exhibit A consists of 147 separate items of various amounts and dates, aggregating the amount claimed. Exhibit B consists of a list of nine items of various amounts and dates, aggregating the amount claimed to be proper credits in favor of respondent against the deceased.

To this complaint respondent answered, denying all of the allegations of paragraph 2, and specifically denying that the deceased furnished any of the items except as in the answer admitted, and specifically denying each item in exhibit A, except items 5, 8, 9, 10, 11, 12, 15, 16, 17, 18, 19, 20, 74, 83, 85, 86, 108, 113, 115 and 122, which he alleges were received as payments on account and denies all the other items in exhibit A. He also denies the allegations in paragraph 3 of the complaint, and every part thereof, in so far as appellants endeavored to set up an account from loose, unauthenticated memoranda, and alleges that, if any account is to be placed, it does not contain any substantial part of the credits due respondent. He denies that defendant had only $27,093.47 in goods in decedent's possession, and alleges that such goods were worth not less than $45,000, and that his total investment, including such goods with decedent, was $50,000.

By way of a first affirmative defense, respondent alleges that the case is not commenced within the time limited by law. For a further affirmative defense, he alleges that the sums admitted, and if there were any other sums of money sent by deceased to respondent, were forwarded as payments upon accounts of money

owing to respondent by decedent, and for goods, wares
and merchandise sold and shipped by respondent to
decedent, and prays that an accounting be had.

For a third affirmative defense, respondent pleads
that the matters and things were before the court in
probate cause No. 24596, and the evidence and exhibits
are a part of the record upon appeal in that cause, and
asks to have the action stayed until a final decision
should be reached in that cause.

For a fourth affirmative defense and cross-complaint,
respondent alleges that the deceased had in his posses-
sion $45,000 worth of goods belonging to respondent,
and that an accounting should be had between them
of moneys received by them from the sale of partner-
ship assets.

To this answer the appellants joined issue by appro-
priate denials, whereupon respondent filed an amended
answer, being the same as the foregoing answer down
to the second affirmative defense, and in place of the
second affirmative defense alleged that, in the probate
cause of Louis Levy, it had been adjudged that the part-
nership had been commenced by deceased and respond-
ent in the fall of 1918, and the items contained in ex-
hibits A and B, after the last days of August, 1918,
would be matters accruing subsequent to the com-
mencement of the partnership. The third and fourth
affirmative defenses allege matters of law. The fifth
defense alleged that, if the sums set forth in exhibit
A were forwarded at all, they were for moneys paid
by respondent for the deceased. The sixth affirmative
defense pleads that the evidence concerning matters in
controversy is in the probate case on appeal to the
supreme court, and asks to have the action stayed. The
seventh affirmative defense alleges that Levy had $45,-
000 worth of goods belonging to respondent in his
possession at his death, and that he sent Levy $3,500

after the partnership was formed, on about September 1, 1918.

Appellants filed a reply, denying the affirmative defenses and pleading the statute of limitations of the Territory of Alaska touching such matters, which were set out in the reply in full, and which showed that the statute of limitations upon accounts in Alaska is six years.

Appellants demanded, in writing, a trial by jury, and paid a jury fee into court. The case was set for trial as a jury case, and on the second day of May, 1921, came on for trial. The respondent objected to the case being tried by a jury, which objection was first overruled, and later, after an examination of the issues, and statements by counsel, the objection to trial by a jury was sustained, and the jury was discharged.

At the trial of the case, respondent obtained leave to, and again amended his answer, and by way of a fifth affirmative defense alleged that in July, 1913, he took into partnership the deceased, Louis Levy, at Fairbanks, Alaska; that, on about July 16, 1914, he sold out his interest in the partnership to the deceased, Louis Levy, for the sum of $40,000, taking in payment notes of Louis Levy, and from and after that date Louis Levy was the sole owner of the business conducted at Fairbanks; that thereafter respondent came to Seattle, where he purchased large stocks of merchandise and sold the same to Louis Levy at various times; that, from the time of the dissolution of the partnership and to the date of the commencement of the new partnership, respondent shipped goods and merchandise to the decedent, and paid bills for the use and benefit of the decedent in a sum greater than the amount sued upon herein; that a settlement was had between the parties hereto of all debts and liabilities existing be-

tween them, at Anchorage, Alaska, in the last days of
August, or the first days of September, 1918; that all
sums forwarded to respondent, if any be proved, were
for payment on account, either for money owing re-
spondent by way of the original sale, or for goods,
wares and merchandise sold and shipped to Louis
Levy; that, without waiving any of his legal rights
heretofore set forth in his answer and affirmative de-
fenses, respondent alleged that the court cannot try
out and determine the issue except upon an accounting
between the parties, and prayed that, in equity and
good conscience, appellants be required to make full
and complete and conclusive proof of their complaint
by way of an accounting between the parties during the
period through which it is claimed remittances were
made to respondent.

The trial court entered findings of fact, (1) that de-
cedent, Louis Levy, and respondent were in partner-
ship prior to July 10, 1914, on which day respondent
sold his interest to decedent for $40,000, taking there-
for the notes of decedent; (2) that between July 10,
1914, and September 1st, 1918, respondent made sales
and shipments of goods to decedent, and during that
time decedent remitted to respondent sums of money
as payment on account of the notes and the merchan-
dise; (3) that, on or about September 1st, 1918, deced-
ent and respondent made a complete settlement with
each other of the mutual accounts and indebtedness,
and that, by reason thereof, there is no necessity for an
accounting as to such matters; (4) that thereafter re-
spondent and Louis Levy entered into a new partner-
ship; and (5) that all matters connected with the part-
nership existing at the time of the death of decedent,
to wit, to September 1, 1918, had been eliminated by
stipulation.

Upon these findings the court concluded, (1) that appellants' complaint should be dismissed with prejudice; and (2) that the cross-complaint of respondent as to matters connected with the co-partnership existing between the parties at the time of the death of Louis Levy should be dismissed without prejudice.

Judgment was entered in conformity with these findings and conclusions in favor of respondent, from which appeal has been taken to this court.

The first claim of error on the part of appellants is the denial of trial by jury.

When the complaint is taken and considered in connection with the amended answer of respondent, it is manifest that the pleadings show, (1) an action by the administrators of the estate of one partner against the surviving partner, thus showing a fiduciary relation; (2) that the interest of the surviving partner in the goods held by the decedent at the time of his death had been theretofore adjudicated to be presumptively a half interest (see *Simon v. Levy,* 114 Wash. 556, 195 Pac. 1025); (3) that decedent and respondent had a large number of mutual accounts.

We make these statements bearing in mind the fact that all items in controversy between the parties originating after the formation of the new partnership about September 1, 1918, had been eliminated by counsel for the respective parties by stipulation; but as the issues stood when the case went to trial, it was undoubtedly an action requiring an accounting. Such action is not triable by a jury. *Garey v. Pasco,* 89 Wash. 382, 154 Pac. 433.

The remaining errors, most of them, have reference to alleged errors in the admission or rejection of evidence.

The first of these refers to the admission of testimony of respondent in permitting his testimony given

on a former trial in the probate proceeding to be introduced in evidence upon cross-examination of witness Royse. Witness Royse was a court reporter, who took the testimony in the former trial referred to, although it is shown that he did not hear all of it. He was called by appellants and interrogated as to the testimony of respondent in that cause between the same parties as the parties to this action. Respondent then cross-examined the reporter as a witness as to the testimony of respondent, and introduced the complete transcript from the notes of the reporter, of his testimony on the previous trial.

The evident object of introducing in evidence the testimony of respondent at the former trial, so far as it was offered by appellants, was to show contradictory statements and admissions and declarations against interest. Having done so, appellants were in no position to object to the introduction of the remainder of his testimony for the purpose of harmonizing and reconciling all of his testimony, if possible. The statute, § 1211 Rem. Code (P. C. § 7722), excluding parties in interest from testifying as to transactions with decedents, may be waived as well as enforced. Hence, when the administrators offered in evidence the answers given by respondent as a witness, to certain questions asked him at the probate hearing, he would have been privileged to testify to any fact to which his questions and answers referred, and possibly the entire transaction. *Percy v. Miller,* 115 Wash. 440, 197 Pac. 638.

Other errors claimed relate to the exclusion of letters written by the deceased, and of declarations made by the deceased, and of bank statements of the deceased in a bank at Fairbanks, Alaska. None of the offered evidence was admissible. All of it was of the character of self-serving declarations. It is almost the universal

rule that the declarations of a decedent in favor of his own interest cannot be admitted, and only those declarations which are against his interest can be admitted. *Reese v. Murnan,* 5 Wash. 373, 31 Pac. 1027.

It is next contended that the admission of evidence showing payment by respondent of any or all accounts which may have been due the decedent was improper and incompetent, because payment was not alleged.

It was alleged that any moneys or merchandise furnished respondent by the decedent was furnished on account of moneys and accounts owing to respondent from the decedent, and that, in the summer of 1918, their mutual accounts were fully settled by them. In any event, evidence introduced showing that the goods and moneys forwarded by decedent, as alleged by appellants, were forwarded for goods and moneys owing by their decedent to respondent, was admissible under the general denial as proving that the alleged sales and loans were never made as alleged in the complaint, and were not in fact sales nor loans. *Howatt v. Clark,* 112 Wash. 137, 192 Pac. 7.

Appellants allege error in the findings of fact and conclusions of law, and devote much space to their contentions that the evidence did not preponderate with the court's findings, but, on the contrary, preponderated against them.

There was some evidence on the part of a certain witness, Weinberg, whose credibility is vehemently attacked, that he saw and heard certain things in the latter part of August, 1918, in Fairbanks, Alaska, between the deceased and the respondent, which showed that they had arrived at a settlement and money was paid to consummate it. The trial court had the advantage of seeing and hearing the witnesses testify, and judging of their demeanor, which we have not.

Unless we can see that the admission or exclusion of evidence led to some injustice to the losing party, we generally do not, and should not, reverse the judgment of the trial court. The evidence was competent, being the evidence of an eyewitness, and we must believe that the trial judge, who was the sole trier of the facts, refused to consider testimony which appellants insist was incompetent or unworthy of belief, and considered that which enlightened him on the issues only. A trial judge is generally able to separate the grain from the chaff, and decide a case upon such testimony alone as is proper to be considered.

We must concede that this case is one of great importance to the heirs and representatives of the deceased, and that the lips of Louis Levy, being closed, competent evidence was very hard to obtain. In a brief summing up, in passing upon appellants' motion for a new trial, the trial court made some observations which convince us that he very carefully considered the evidence offered, and as he stated, "viewed the probabilities in the light of the peculiar situation that the deceased and respondent were brothers between whom a very intimate relationship existed, and very great confidence one in the other." The trial court also conceded that the witness Weinberg was the only witness to the transaction constituting a settlement between the deceased and respondent in Alaska, and also that it was necessary to show that the parties not only agreed to a settlement, but that they made a settlement by paying the money; and the trial court considered, and so stated, that the testimony of Weinberg was corroborated in all particulars as to the settlement so agreed upon. Bear in mind that the partnership which had formerly existed between Louis Levy and his brother, the respondent, had been ended several years before; that Louis Levy was

owing, upon the dissolution of that partnership, $40,-000 to respondent, his brother, for the purchase money of respondent's interest in that business, and it was shown that a great deal of merchandise was shipped from Seattle to the deceased in Alaska after the partnership was dissolved and prior to September 1, 1918. While a book account was introduced on behalf of appellants showing the items set forth in their exhibit A, to some extent at least, none of these items show upon what account, or for what purpose or application, any of the checks or drafts sent to Barney Simon were made. We cannot presume that the moneys sent by check and draft by Louis Levy to respondent were in the nature of loans, when the evidence shows conclusively that a great deal of merchandise was being shipped to him during all the time, and that he also owed respondent for the purchase price of his interest in the former partnership.

We are unable, therefore, to conclude that the evidence preponderates against the findings of the trial court. Such being the case, the judgment must be, and is, affirmed.

PARKER, C. J., MAIN, MACKINTOSH, and HOVEY, JJ., concur.