[No. 16814. Department One. May 5, 1922.]

CHARLE JOHNSON, *Respondent,* v. CHARLES R. CLARK,
*as Administrator etc., Appellant.*[1]

APPEAL (452) — REVIEW — HARMLESS ERROR — ADMISSION OF EVI-
DENCE NOT AFFECTING TRIAL DE NOVO. Error cannot be predicated on
the admission of incompetent evidence as to a transaction with a
person since deceased, where the case was tried *de novo* on appeal
and there was sufficient competent evidence to support the judgment.

EXECUTORS AND ADMINISTRATORS (145) — ACTIONS — DEFENSES—
NON-PERFORMANCE OF CONTRACT. Where a decedent had failed, in her
lifetime, to complain of non-performance of a contract, under
changed conditions, by which she had agreed to give a half interest
in lands in consideration of certain services, which were performed
in part, the defense of non-performance is not open to defeat the
claim against the estate; performance to the satisfaction of the de-
cedent being sufficient.

WITNESSES (49)—TRANSACTION WITH DECEASED—WAIVER OF OB-
JECTION. In an action on a claim against an estate, evidence by
plaintiff that part of certain money paid decedent was his own
money, cannot be objected to as evidence of a transaction with the
decedent, where it was brought out on appellant's cross-examination
of the plaintiff; since he who would invoke the statute, must re-
spect it.

Appeal from a judgment of the superior court for
King county, Smith, J., entered May 5, 1921, upon find-
ings in favor of the plaintiff, in an action to establish a
claim against the estate of a decedent, tried to the
court. Affirmed.

*George A. Custer,* for appellant.

*George W. Bright* and *Robert D. Hamlin,* for re-
spondent.

FULLERTON, J.—Ruth Wilson Anderson died intes-
tate in King county, Washington, in September, 1920,
leaving an estate therein consisting of money and

[1]Reported in 206 Pac. 914.

jewelry. The appellant, Charles R. Clark, a brother of Mrs. Anderson, was appointed administrator of her estate. After the appointment and qualification of the administrator, the respondent, Charle Johnson, presented a claim against the estate for one thousand dollars and for the jewelry, averring in support thereof that the sum of money was a balance due him from the sale of certain real property in which he had an interest, and that the jewelry was given him by Mrs. Anderson shortly prior to her death. The claim was rejected by the administrator and the present action was instituted to establish it. The trial court allowed a recovery for the money claim, but denied the claimant's right to the jewelry. The appeal is by the administrator.

The witnesses seem not to be agreed as to the exact age of Mrs. Anderson at the time of her death, but she was probably at that time between the ages of seventy-six and seventy-eight years. In 1918, Mrs. Anderson was the owner of, and resided alone upon, an eighty-acre tract situated near Brennon, in Jefferson county. In July of that year she made some arrangement with Johnson to go upon the place and take care of it for her. In November of the same year, she, with Johnson, went to the office of an attorney in Seattle and procured him to draw a contract expressing the terms of the agreement. By the terms of the contract, Mrs. Anderson promised that, in consideration of the promises and agreements made by Johnson to her, thereinafter recited in the contract, "and the faithful carrying out of said agreement as provided for," Johnson "shall have and own an undivided half interest in and to the" real property. Johnson, on his part, promised that he would farm and cultivate the tillable land upon the premises; that he would repair and keep up all fences

thereon; that he would furnish half the seed necessary to seed the premises for the crop of 1919, and would furnish all of the seed for the subsequent years; that he would furnish all necessary farming implements except such as were then on the premises; that he would furnish all necessary stock and care for and feed them; and that he would furnish a home on the premises for Mrs. Anderson during her natural life. The contract further provided that, in the event of the death of Mrs. Anderson at any time after the execution of the agreement, Johnson should be entitled to have conveyed to him an undivided one-half interest in the real property, or to have the property then divided and one-half thereof conveyed to him.

After the execution of the contract, the parties resided on the property until the month of July, 1920, when it was sold to the present administrator for four thousand dollars in cash. Johnson was present at this sale and made no objection thereto, having, as he says, an agreement with Mrs. Anderson for an interest in the proceeds. For a time after the sale, Mrs. Anderson continued to live on the place with the purchaser, when she left, going to a near-by abandoned school house. Johnson, who was then working in a logging camp, learned of her situation, and came and removed her to Seattle, placing her in a rooming house where she would receive personal attention. Mrs. Anderson was then suffering from Bright's disease, and died of this ailment about a month later in a hospital to which she had been removed when the ailment became acute.

After receiving the money from the sale of the land, Mrs. Anderson deposited it, with one hundred and twenty dollars additional, in a national bank in the city of Seattle. Shortly thereafter she transferred to Johnson eleven hundred and twenty dollars of the deposit; Johnson explaining that one thousand dollars of it was

for his one-half interest in the purchase price of the land, and the remainder money which he had left with her, earned by him by labor in a logging camp. This transfer she made in the presence of an officer of the bank, telling him at the time that it was money belonging to Johnson. While in the hospital she wrote on the fly leaf of the bank book given her on making the deposit a crudely written and spelled order directing the bank to give Johnson one thousand dollars, signing it Ruth W. Anderson. She stated to the rooming house keepers that she owed Johnson one thousand dollars in addition to what she had paid him, and made a similar statement to the physician who waited upon her during her last sickness.

The chief defense against the claim was that Johnson had not complied with his contract with reference to cultivating the real property. It is true that Johnson did not spend all of his time working on the land, and that he worked, when not working on the land, in a near-by logging camp. But it is in evidence that he returned to the place at the close of each day's work and at all times did the necessary chores about the place. He also purchased a cow for the family use, purchased a horse to replace one that had died, and raised a few chickens. He also repaired the outside fences surrounding the premises, constructed cross fences and built a bridge thereon. He raised a garden, plowed other portions of the land and sowed it to oats which he cut for hay, cutting hay also from certain other parts of the land which produced annual crops without seeding. Johnson was without means when he went onto the land, a fact known to Mrs. Anderson, and it was doubtless necessary for him to do outside labor in order to comply with his agreement in so far as he did comply with it. But it is also true that Mrs. Anderson made no complaint of his action. She manifested con-

fidence in him at all times, although, if dissatisfied, she had abundant opportunity to make her inclinations known after the real property was sold. She not only did not then attempt to repudiate the agreement, but repeatedly recognized it as a binding obligation upon her. That she was not influenced by charitable considerations is also deducible from the evidence. No one had greater claims upon her bounty than Johnson, yet she meted out to him nothing more than exact justice. She sought to give him only a one-half of the money received from the sale of the land, while it was in her power to give him all.

The appellant's assignments of error relate principally to the admission of evidence. It is contended that the court permitted Johnson to testify to transactions had by him with Mrs. Anderson and to statements made to him by her, contrary to § 1211 of the code (Rem; P. C. § 7722). The brief does not point out the specific instances where the rule is claimed to have been violated, and in our reading of it we find none that is clearly apparent. But the question is not very material in any event. The cause was tried in the court below without a jury, and is here triable *de novo*. Discarding all evidence which could be held to be objectionable, there was sufficient in the record to support the judgment. Indeed, it seems to us no other conclusion could well have been reached. We have not overlooked the appellant's argument to the effect that a strict compliance with the contract on Johnson's part must be shown in order to warrant a recovery, and that a compliance to the satisfaction of the other party to the agreement is not sufficient. But we do not understand that such is the rule. Mrs. Anderson was present at all times during the performance, and it was her duty at that time to complain and repudiate the contract if

she concluded it was being breached. Failing in this, she herself could not complain after the change in conditions, and her representative has no higher right.

Finally, it is complained that the recovery is excessive. It will be remembered that the first payment made by Mrs. Anderson to Johnson was eleven hundred and twenty dollars. Johnson testified that one hundred and twenty dollars of this money was his own and that Mrs. Anderson but repaid it to him. The argument is that this was the only testimony on the question, that it was testimony relating to a transaction with the deceased, and hence incompetent under the statute; the conclusion drawn being that the final recovery should have been one hundred and twenty dollars less than that allowed. But the record shows that this testimony was brought out on the cross-examination of Johnson by the respondent's own attorney. This being so, the court was warranted in considering it under the authority of Robertson v. O'Neill, 67 Wash. 121, 120 Pac. 884. As Judge Gose points out in that case, it would be palpably unjust to permit the representative of a deceased person to examine the opposing party on matters which the party would otherwise be incompetent to testify and accept his testimony in so far as it aids him and reject it in so far as it is adverse to him. "The logic of the cases is that the party who invokes the protection of the statute must himself respect it." On this branch of the case Johnson was compelled to rely upon more indirect proofs. He sought to show by Mrs. Anderson's conduct and declarations that she recognized this particular sum as money belonging to him. If we were compelled to rely upon these proofs alone, we think he fully sustained the burden.

The judgment is affirmed.

PARKER, C. J., MITCHELL, TOLMAN, and MACKINTOSH, JJ., concur.