[No. 28272. Department Two. August 12, 1941.]

MAUD E. JOHNSTON, *Appellant,* v. MEDINA IMPROVE-
MENT CLUB, INC., *Respondent.*[1]

[1]Reported in 116 P. (2d) 272.

*Arthur E. Griffin,* for appellant.

*Gordon McGauvran* (*Charles L. Hamley,* of counsel), for respondent.

SIMPSON, J.—Action was instituted in this case to recover title to real property situated in Medina, King county, Washington. Plaintiff filed three complaints in the action. The first complaint, filed February 11, 1939, alleged that, December 27, 1923, plaintiff and Elias W. Johnston, her husband, deeded to defendant company a tract of community owned real property situate in Medina; that Elias W. Johnston died September 7, 1928, and thereafter his estate was probated and the property belonging thereto distributed to plaintiff.

It was further alleged that the consideration named in the deed was the sum of one dollar, but in truth and in fact that amount was never paid to the grantors; that the conveyance was made upon the understanding that defendant was to forthwith erect and thereafter maintain a community clubhouse, for the benefit of the citizens residing in and near Medina and the grantors through an anticipated increase in their adjoining property; that defendant did not build a clubhouse, nor comply in any way with the oral promises made at the time the deed was executed; and that now and ever since the execution of the deed, defendant holds the property in trust for plaintiff. The prayer of the complaint asked that defendant be made a trustee of the disputed property for plaintiff, and that defendant be ordered to execute a disclaimer of all interest thereto.

A supplemental complaint was filed February 25, 1939, alleging that, February 16, 1939, defendant deeded the property to King county for a stated consideration of one dollar, which was not paid by the county. Other allegations of the supplemental complaint stated that the execution of the deed was performed without a meeting of the members of the club; that the conveyance was not authorized by the

members, but was made by its officers without any authority; that the deed attempted to convey all of the defendant's property; and that the instrument constituted a cloud upon plaintiff's title.

King county was made a party defendant. After filing an answer disclaiming all interest in the property, it was dismissed from the proceeding.

December 11, 1939, plaintiff filed her third complaint, restating all of the facts contained in the original complaint together with the following allegations: That the deed to Medina Improvement Club, Inc., was obtained by fraud, undue influence, and overreaching on the part of the officers and agents of defendant corporation. The allegations of fraud and undue influence charge representations to the effect that the officers and agents of the club were neighbors and friends, and represented that they wanted to secure the land for the purpose of building a clubhouse thereon for the use and benefit of those living in and near Medina; that all that was needed to complete the clubhouse was a conveyance of the property to defendant. Plaintiff alleged that she and her husband believed those representations and acted upon them by deeding the property to defendant. It was further alleged that defendant did not build the clubhouse, but, on February 14, 1939, deeded the property to King county.

Plaintiff, in order to excuse her delay in bringing the action, alleged that:

"Plaintiff and her husband had confidence in and trusted in their neighbors and their proposal to erect said club house; plaintiff's husband was in ill health much of the time from the time the deed was made to the time of his death, caring for her husband and worries over sickness of plaintiff, and her health, distracted plaintiff's attention from business matters; continued severe depression since early in the year 1932 to date caused plaintiff to believe defendant had

encountered financial difficulties which delayed, but would not prevent, building of said club house; plaintiff has never had any business training or experience to fit her to handle important business transactions."

Defendant in its answer denied the allegations of fraud or undue influence. It alleged that the action was barred by the statute of limitations, and that plaintiff was guilty of laches and undue delay in exercising her right and in bringing the action.

Additional allegations of the answer stated that, in the latter part of the year 1923, Elias W. Johnston contacted members of defendant club and proposed to them that he would deed to the club the real property in question if they would bring about the vacation of a certain county road which prevented ingress and egress to and from his property to the highway; that the members of the club agreed to the proposition and did secure the vacation of the road, whereupon plaintiff and her husband deeded the land to defendant with the only restriction that there should be no gambling or games of chance, nor the use of intoxicating liquors or narcotics on the premises.

Defendant did not answer the original complaint within the time allowed by statute, and an order of default was entered against it. Thereafter, its motion to vacate the order of default was granted. The case was tried to the court, and a judgment dismissing the action entered. Plaintiff has appealed.

The assignments of error are (1) in setting aside the order of default; (2) in permitting respondent to defend after it had deeded the property to King county; (3) in permitting the officials of respondent club to testify to conversations had with Elias W. Johnston; (4) in holding that the action was barred by the statute of limitations; (5) in refusing to impress a trust upon the property in favor of appellant; and (6) in

denying a motion for a new trial, and in entering judgment in favor of respondent.

The undisputed facts are that in 1923 the late Captain Elias W. Johnston and appellant resided upon community owned property at Medina, Washington, a portion of which fronted upon Lake Washington. Respondent had just been incorporated, having for its purpose the advancement of the community interests of the Medina district. December 27, 1923, Captain Johnston and his wife by quitclaim deed conveyed the property in question to respondent for the stated consideration of one dollar. The deed stated:

"This deed is made subject to the following conditional limitation to wit:—In the event that the grantee, its successors or assigns, shall at any time permit the sale or use of intoxicating liquors or narcotics on the premises hereby demised, or shall permit gambling or games of change to be conducted thereon, the said property shall at the option of the grantor, revert to the grantor, *his* heirs, administrators, executors or assigns."

Captain Johnston died September 7, 1928. Thereafter his estate was probated and his property distributed to appellant.

February 7, 1939, respondent deeded the property to King county for "Public Park and Recreational purposes." The stated consideration in the deed was the sum of one dollar.

The testimony of appellant may be summarized as follows: Just prior to the time that the deed was given to respondent, two of its officers, A. B. Flagg and Sherman C. Sawtelle, called upon Captain and Mrs. Johnston on several occasions and explained that they, as residents of Medina, were banded together with others in working for the welfare of the community; that they desired to build a clubhouse for the use of the citizens; that, if the captain and his wife would

deed some property to the corporation, a clubhouse would be built and maintained; and that it would be a great credit to Medina and to Mr. and Mrs. Johnston. She stated that the men interested in securing the land said that it would furnish the initial backing; that the clubhouse would be built and that the interests of every one would be protected. Appellant testified that Mr. Flagg and Mr. Sawtelle repeated the statements many times, and finally influenced appellant and her husband to sign a deed for the consideration of one dollar which was not paid. Appellant explained that, during the years following the conveyance, her husband was very ill and had to be away from Medina a great portion of the time; that she did not understand business affairs, and because of that and the fact of her husband's illness and death she did not pay much attention to the activities of the club. She admitted, however, that she and her husband lived in Medina most of the time and knew that the clubhouse had not been constructed.

Mrs. Dahlgren, a neighbor of appellant, testified that she talked with Mr. Flagg who told her that the corporation had secured some land from the Johnstons, and that the members of the corporation had to raise money to build a clubhouse. She stated that the club members gave several card parties for that purpose.

The evidence produced by respondent contradicted that given by appellant relative to the representations made just prior to the time the deed was given to respondent. Its witnesses testified that, in the early part of 1923, Captain Johnston expressed the desire to give some waterfront property to the club if its members would secure the vacation of certain county land which prevented ingress and egress to and from his property to the highway. In compliance with the offer, certain citizens of Medina, acting as a committee

for respondent, called on the county commissioners of King county on several occasions and were successful in securing the vacation of the land; and that thereafter, in consideration of their efforts, the property in question was deeded to respondent. Witnesses further testified that the consideration named in the deed, one dollar, was paid to Captain Johnston. The witnesses also testified that no representations were made to either Captain Johnston or appellant concerning the erection of a clubhouse.

It was further shown that some improvements were made on the premises consisting of picnic tables and benches, and the building of an outdoor fire place. According to their evidence, the property had been used several times for picnic purposes.

The first question for our determination is whether the trial court erred in vacating the order of default entered before judgment March 7, 1939. Appellant bases her assignment of error on two grounds: That the trial court abused its discretion in granting the motion to vacate the order; and that, having disposed of the property, respondent was in no position to move to vacate the default.

The controlling statute on this question is Rem. Rev. Stat., § 412 [P. C. § 8110], which reads:

"The court may, in its discretion, before final judgment, set aside any default, upon affidavit showing good and sufficient cause, and upon such terms as may be deemed reasonable."

This defines the power and duties of the trial court relative to the vacation of orders of default where the motion to vacate is made *before* the entry of final judgment.

Thus a motion to set aside an order of default made before the entry of final judgment is within the discretion of the trial court to grant or deny. *Mason v.*

*McLean,* 6 Wash. 31, 32 Pac. 1006; *Plummer v. Weil,* 15 Wash. 427, 46 Pac. 648; *Jordan v. Hutchinson,* 39 Wash. 373, 81 Pac. 867; *Bardon v. Hughes,* 45 Wash. 627, 630, 88 Pac. 1040, 1041.

Appellant contends, however, that, in order to secure the vacation of a default order, the moving party must support the motion by an affidavit of merit showing a meritorious defense. Many decisions are cited by her counsel as supporting this contention. An examination of these cases discloses that they all refer to the setting aside of a final default judgment, which is governed by Rem. Rev. Stat., § 464 [P. C. § 8130].

We hold that, in order to vacate an order of default, it is not necessary for the moving party to file an affidavit of merit; that the only prerequisite is an affidavit showing a reasonable excuse for the delay in appearing or pleading.

■ However, the question remains: Did the court in ordering the vacation of the order of default abuse its discretion? An examination of the affidavits in support of the motion to vacate the default order shows that, immediately after respondent had been served with summons, Floyd Croft, president of respondent corporation, called the attention of the county planning commission to the fact that action had been commenced and was told that King county would defend; that, thereafter, on the advice of a deputy prosecuting attorney the county decided not to enter a contest of the action.

It was further shown by the affidavits that respondent proceeded to defend the action as soon as its officers were advised that King county would not, and that, if respondent was permitted to defend, the allegations of plaintiff could be successfully contradicted and disproved.

From the preceding, it is clear that respondent had

reasonable grounds to believe that King county would defend the suit. Upon being subsequently notified to the contrary, it immediately proceeded to contest the action. Therefore, we hold that the trial court did not abuse its discretion in vacating the default order.

We are unable to agree with appellant's second contention that, having disposed of the property, respondent was in no position to move to vacate the default.

As referred to above, appellant has failed to distinguish between (1) an order vacating a default judgment, governed by Rem. Rev. Stat., § 464 [P. C. § 8130], and (2) an order vacating a default order entered before judgment, governed by Rem. Rev. Stat., § 412 [P. C. § 8110]. In the former, the prerequisite is showing a meritorious defense. While in the latter, only a good and sufficient cause need be set forth. Thus whether respondent possessed a property interest at the time of its motion was immaterial. The court was concerned with one question: Did respondent present a reasonable cause to justify setting aside the default order? Whether or not respondent possessed an interest in the property was an issue to be decided when the merits of the case were litigated.

In addition, respondent's presence in the action was necessary for a complete determination of all the issues arising out of the controversy. After filing her first complaint naming respondent as the sole defendant, appellant learned of the quitclaim deed to King county. Instead of asking for respondent's dismissal on grounds of her present contention, appellant filed a supplemental complaint joining both respondent and King county as defendants. She alleged that:

" . . . and for the purpose of wronging and defrauding the plaintiff, the defendant attempted by an instrument in writing, to convey the property de-

scribed in the complaint herein, to the defendant King County."

It was further alleged that the deed was in violation of respondent's trust of holding the property as trustee; that, by accepting the conveyance, King county held the land as trustee; and that this deed constituted a cloud upon her title. Thus, in order for the court to have determined the issues, of respondent's alleged fraud and of whether the county's deed constituted a cloud upon appellant's title, raised by her pleadings, respondent was a necessary party.

In 51 C. J. 208, § 138, it is said:

"It has also been held that, where the cloud sought to be removed consists of an alleged fraudulent conveyance, the persons executing such conveyance, against whom fraud is charged, are necessary and indispensable parties."

Likewise, in 4 Bancroft's Code Pleading, 3883, § 2177, it is written:

"In a suit to remove a cloud, as by canceling an instrument of record, the proceeding being equitable in its nature the equity rules as to parties are followed and it is necessary to join every person whose legal or equitable status with respect to the property would be materially affected by the judgment. *The parties to an alleged fraudulent deed constituting the cloud sought to be removed, should be joined.*" (Italics ours.)

See, also, *Florida Land Rock Phosphate Co. v. Anderson,* 50 Fla. 501, 39 So. 392; *Crow v. Hardridge,* 43 Okla. 463, 143 Pac. 183; *Hitchcox v. Hitchcox,* 39 W. Va. 607, 20 S. E. 595.

While these three cases are not similar to the factual situation at bar, they do relate to the party defendant question in actions to remove a cloud. Furthermore, the first two illustrate the above rule of law that, in a suit to remove a cloud from the title of real property

and to have a deed canceled as fraudulent, the parties executing such a conveyance against whom the fraud is charged are necessary and indispensable parties to the proceeding. In *Hitchcox v. Hitchcox, supra,* although there was no question of fraud, the court held that, since the legality of the manner in which the defendant's grantor derived his title was assailed, such grantor was a necessary party to the suit.

Therefore, it is our conclusion in the case at bar that, since respondent was maintained as a party defendant, since appellant's pleadings raised issues demanding respondent's presence in the action, and since the court had the right to determine all the various questions in the one proceeding, respondent was a necessary party though it did not possess title at the time action was commenced.

In her next contention, appellant advances the preceding argument a step further: that, having disposed of its title prior to the time suit was instituted, respondent possessed no right to defend or contest the action.

While the general rule in actions to remove a cloud or quiet title is that one who has parted with his interest in the land is not a necessary party defendant (51 C. J. 207, § 138; *James v. Brainard-Jackson & Co.,* 64 Wash. 175, 116 Pac. 633), nevertheless the peculiar facts of this case prevent us from acquiescing in appellant's contention. Conceding *arguendo* appellant's contention, it does not follow that, once action was commenced, all persons, regardless of a subsequent acquired interest in the matter in litigation, were thereafter precluded from entering the contest.

The facts show that the club regained title from King county through operation of law by reverter. February 7, 1939, respondent quitclaimed the land in question to "King County, Washington, for Public

Park and Recreational purposes." This constituted a dedication of respondent's property to the county for the above specific public purpose.

"Dedication originates in the voluntary donation of the owner or seller, and when the intention of the owner to dedicate is clear, manifest, and unequivocal, whether by a written instrument or by some act or declaration of the owner manifesting his clear intent to devote the property to public use, it becomes effective for that purpose. *Shell v. Poulson*, 23 Wash. 535, 63 Pac. 204." *Corning v. Aldo*, 185 Wash. 570, 55 P. (2d) 1093.

Besides the intent to dedicate expressed in the deed, the record discloses that respondent and the county planning commission had been conferring for some time prior to this action; that, with W. P. A. funds, the county intended to construct a community park upon the property. Although a consideration of one dollar was stated, in fact never paid, for all practical purposes the deed was a voluntary donation.

Upon being joined as a party defendant, King county filed a disclaimer of interest stating:

". . . King County . . . disclaims having any right, title or interest in or to the property in question in this action or any interest of litigation in this case, . . ."

Thereafter, an order dismissing the county from the action was entered.

In disclaiming all interest in the dedicated property, the county, in effect, may be said to have either (1) abandoned the property or (2) refused to execute the express specific purpose of the dedication. By the weight of authority, where property dedicated to the public is abandoned or relinquished, the public's rights are terminated and the land by operation of law reverts to the dedicator. In 2 Thompson on Real

Property (Perm. ed.), 72, § 495, the rule is stated as follows:

"In case the ownership is in the public, a relinquishment of such use by the authorities terminates the rights of the public, and the land reverts to the original dedicator, or to persons claiming under him."

An excellent statement of the rule is found in 4 Tiffany, Real Property (3rd ed.), 371, § 1113:

"In case a right of user only is vested in the public, an abandonment of the right has the effect of leaving the land free from the burden thereof in the original dedicator or those claiming under him. And even when, under the statute, the ownership is vested in the public, if the authorities entirely relinquish the use of the land, or the use for which the land was dedicated becomes impossible, the land has been held to revert to the original dedicator, or to persons claiming under him."

In *Board of Education etc. v. Edson,* 18 Ohio St. 221, 98 Am. Dec. 114, certain lots were dedicated to the village of Van Wert by plat " 'for school purposes and on which to erect school houses.' " Subsequently a railroad company constructed a depot in close proximity to the school rendering it worthless for educational purposes. Plaintiff board of education asked for authority to sell the lots and apply the proceeds to the purchase of a new school site. Defendants contended that, since circumstances had rendered the dedication purpose impossible, the land reverted to the original proprietors and their grantees.

In holding for the defendants, the court stated:

"The dedication in this case, as stated in the petition, was 'for school purposes, and on which to erect school houses.' Without determining whether, under this dedication, the lots could properly be used for school purposes, other than the erection of school houses thereon, it is enough to say that the dedication is of the *land,* and not of its value or proceeds. It confers no

power of alienation discharged of the use by which the purpose of the dedication might be utterly defeated. *Should the sole uses, to which the property has been dedicated, become impossible of execution, the property would revert to the dedicators, or their representatives."* (Italics ours.)

In *Newark v. Watson,* 56 N. J. L. 667, 29 Atl. 487, 24 L. R. A. 843, action in ejectment was brought by plaintiff municipality to recover possession of certain property. The proprietors of East New Jersey had conveyed by deed the land in litigation to the "old settlers of the town of Newark for a burying-ground, and to be appropriated for no other use or purpose whatsoever." Thereafter an ordinance and a legislative enactment prohibited the use of the land for burial purposes. In deciding that the property reverted to the proprietors, the court remarked:

"By the absolute extinction of the sole use for which the plaintiffs held this land, the fee reverted to the original proprietors of East New Jersey, and the title being thereby, after 1848, in the proprietors and not in the plaintiffs, the statute of limitations began to run in favor of the defendants in ejectment in 1848."

A similar case is *Campbell v. Kansas,* 102 Mo. 326, 13 S. W. 897, 10 L. R. A. 593. Action in ejectment was instituted to recover land dedicated to defendant city. In the plat, a square was marked " 'Donated for graveyard.' " Thereafter an ordinance was passed vacating the land as a burial ground. Plaintiffs contended that the property reverted to the donor and his grantees. In passing on the question, the court declared:

"An interesting question bearing on the right of reverter, and arising out of the law of charitable uses, has been suggested in the opinions of courts cited by counsel before us, rather than in the points made and elaborated by them. When land is donated for a mere public use, such as highways, streets, wharves, parks and landing places, the use of the land reverts to the

donor upon discontinuance or abandonment of the particular use for which it was donated. This is the result according to the authorities governing the modern law of dedication."

As to the reversion of land dedicated as a cemetery, see 47 A. L. R. 1183. See, also, *Heard v. Brooklyn*, 60 N. Y. 242; *Haberly v. Treadgold*, 67 Ore. 425, 136 Pac. 334; *Gaskins v. Williams*, 235 Mo. 563, 139 S. W. 117, 35 L. R. A. (N. S.) 603.

Thus when the county disclaimed its interest in the property, title reverted to respondent. Therefore, with an interest in the matter in litigation, it clearly possessed the right to defend and contest the action.

Appellant urges next that the court erred in allowing A. B. Flagg and J. B. Lincoln, officers of respondent corporation, to testify about conversations had with Captain Johnston, deceased, relative to the circumstances surrounding the conveyance to the club. She contends that the evidence was introduced in violation of Rem. Rev. Stat., § 1211 [P. C. § 7722]. Respondent argues, however, that, by introducing testimony relating to the transaction in question, appellant, a participant thereto, waived the protective benefits of the statute, and, thus, her privilege to object.

Appellant had testified at length regarding representations alleged to have been made by Mr. Flagg and Mr. Sawtelle to Captain Johnston before the deed was given respondent. She also related the effect which the representations had upon her husband. Furthermore, in answer to questions propounded by her counsel, appellant testified relative to whether the Captain had made an agreement with respondent calling for a trade of land, and to what she had heard him say in regard thereto. Clearly, by the introduction of that evidence, appellant waived the protection which the statute affords.

"The logic of the cases is that the party who invokes the protection of the statute must himself respect it." *Robertson v. O'Neill,* 67 Wash. 121, 120 Pac. 884.

Accord, *Levy v. Simon,* 119 Wash. 179, 205 Pac. 426; *Johnson v. Clark,* 120 Wash. 25, 206 Pac. 914; *Floe v. Anderson,* 124 Wash. 438, 214 Pac. 827; *Gregory v. Peabody,* 157 Wash. 674, 290 Pac. 232.

The evidence of the officers of respondent corporation was properly admitted.

It is claimed by appellant that confidential relations existed between the officers and members of the corporation and Captain and Mrs. Johnston; and that, by fraudulent representations relative to the building of a clubhouse, appellant and her husband were induced to make a deed of their property.

In passing upon the question, the trial court stated:

"If there be any fraud at all in this case it was because of the statements of which the plaintiff has testified. Certainly there was no undue influence and certainly there could have been no overreaching, because the evidence does not show anything more than the statements that were made, and there was no fiduciary relationship existing between the parties. They were just neighbors interested in the improvement of that section of King County known as Medina.

"Undoubtedly there were things said that the Medina Improvement Club intended to build a clubhouse. There cannot be any question about that. And there was no time specified within which a clubhouse could be built or should be and would be built."

A reading of the evidence leads us to decide that the court was entirely correct in its conclusion. We are unable to hold that fraud was proven by clear, cogent, and convincing evidence. On the other hand, we are convinced that no false representations were made or intended by respondent officers. In our opinion, the officers and members of the club gave a consideration

for the deed by bringing about a vacation of the road which divided appellant's property.

Mr. Lincoln testified that Captain Johnston stated to him:

"Lincoln, I would like to make a deal with the Medina Improvement Club whereby I can give them a little piece of waterfront, and this piece of property here in lieu of your helping me on vacating this piece, so all of these tracts that I have here can better to the road."

Mr. Lincoln, Mr. Flagg, and Mr. Croft each testified concerning their successful efforts in securing the vacation of the road, all of which was accomplished before the deed was given to respondent.

 The trial court held that whatever rights appellant may have had were barred by the statute of limitations. In expressing himself upon that point the judge stated:

"So I am of the opinion that whatever rights, if any, the plaintiff had have long since been barred by the statute of limitations, because certainly here was a direct thing, a thing that was going to be done in the near future, and finances were arranged, and the thing was going to go right ahead. Now that is part of the testimony. At a later time the plaintiff does say that she did not expect it to be built right away. But the construction which the court places upon her testimony is that it was to be built within a reasonable time, and that reasonable time has long since expired. Certainly we could not wait sixteen years to find out whether or not a clubhouse is going to be built when the neighborhood says, and it is testified now, that the club did not have any meetings for a number of years, and certainly there could not be any expectation that the clubhouse was to be built."

Appellant, in her original complaint, stated that the officers of the corporation agreed to "forthwith erect and thereafter maintain" a clubhouse upon the property. During all of the time thereafter she knew that

the clubhouse had not been erected. Whatever right of action she may have had was lost as the result of the fact that sixteen years had intervened between the conveyance and the bringing of this proceeding.

Some contention was made by appellant that respondent held the property in trust for her. However, in view of our holding that no fraud was perpetrated, and that a consideration was given for the property, we find that no trust resulted.

The judgment is affirmed.

ROBINSON, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.