[No. 30705.  Department One.  March 17, 1949.]

SILAS M. CAREY *et al.*, *Respondents*, v. GEORGE POWELL,
*as Executor, et al., Appellants.*[1]

[1]Reported in 204 P. (2d) 193.

*C. E. Ellis* and *J. D. Searle* (*John M. Reid,* of counsel), for appellants.

*J. H. Jahnke,* for respondents.

JEFFERS, C. J.—This action was instituted by Silas M. Carey and Lela Carey, his wife, against George Powell, executor of the last will and testament of Florence Ryan, deceased, and George Powell and Noma Powell, his wife, for the purpose of obtaining a decree of specific performance of a certain contract made and entered into April 19, 1944, by and between Florence Ryan, a widow, as first party, and Lela M. Carey and Silas M. Carey, second parties.

George Powell appeared and filed an answer and cross-complaint, as executor of the estate of Florence Ryan, deceased. George Powell and Noma Powell, his wife, also appeared, and in their individual capacities filed an answer and cross-complaint. The answers of George Powell, as executor, and of George Powell and wife deny generally the material allegations of the complaint, and especially deny that the contract hereinabove referred to, made and entered into between Florence Ryan and Lela M. Carey and Silas M. Carey, and the will of Florence Ryan, made and executed on the same day as the contract and in connection therewith, ever became effective or valid and binding instruments. Defendants set up several affirmative

defenses, including the alleged defense of a failure of consideration for the contract, and that it was obtained by business duress and compulsion by the plaintiffs. The cross-complaint of the defendants, in which they asked that the property of Mrs. Ryan be set aside to them, is based upon a certain contract made and entered into between George Powell and Noma Powell, husband and wife, and Florence Ryan, on June 21, 1944, and the claimed last will and testament of Florence Ryan, made and executed by her on the same day and in connection with the contract. These contracts and wills will be set out in our general statement of the facts.

Plaintiffs called some ten witnesses to support their respective contentions. Defendants being residents of Illinois, and that being the state where Mrs. Ryan died, defendants obtained an order for, and took, the depositions of some twelve witnesses in the state of Illinois. These depositions were published, and read and considered by the court in its determination of this case, except certain of the interrogatories and answers therein contained, which the court, in its memorandum decision, stated that it had refused to consider.

The events leading up to this lawsuit may be stated generally as follows: Plaintiff Lela Carey is a resident of the state of Washington, and is the daughter and only heir of Florence Ryan, deceased. Mrs. Ryan had lived in Illinois for many years, and in December, 1943, she was seventy-six years of age and in failing health. At this time, Mrs. Ryan wrote to her daughter, suggesting that she come to Illinois, and that she, Mrs. Ryan, would return with Mrs. Carey to Washington. On or about January 5, 1944, plaintiffs went to Marion, Illinois, as requested, and found Mrs. Ryan in failing health. At this time, Mrs. Ryan owned five houses, some household goods, two thousand dollars in savings bonds, one hundred dollars in a checking account, and some thirteen thousand dollars in cash apparently hidden in and about the house.

Soon after Mrs. Carey arrived in Illinois, plans were made for her mother to return with Mrs. Carey and her husband

to Washington. Mrs. Ryan deeded to her daughter, Mrs. Carey, the five houses, and they were shortly thereafter sold for three thousand dollars. The household goods and furniture were sold by and with the assistance of one Aaron Ice, and the money received was delivered to Florence Ryan, who subsequently turned it over to Mrs. Carey. The postal savings bonds were sent in for payment, and the cash in and about the house was turned over by Florence Ryan to Mrs. Carey. All of this money was taken to the bank, and cashier's checks were obtained therefor as follows: One for $13,219.00, made payable to S. M. Carey and Lela Carey; one for $1,121.52, payable to S. M. or Lela Carey; and one for $3,000, payable to S. M. or Lela Carey.

Plaintiffs and Mrs. Ryan thereafter proceeded by train to plaintiffs' home in Centralia, arriving on or about February 8, 1944. There is ample evidence by disinterested witnesses that thereafter and during the time that Florence Ryan lived with her daughter she was given the best of care. For a few months, Mrs. Ryan seemed to be settled and happy in her new home, but her daughter, believing that she would be more contented in a home of her own, bought her a house in Centralia, and provided some furniture and equipment for it.

On April 19, 1944, Florence Ryan and Mr. and Mrs. Carey went to the law office of C. D. Cunningham, in Centralia, Washington, and after consultation with him the will and contract upon which plaintiffs base their action were prepared and executed. The contract provides as follows:

"THIS AGREEMENT made and entered into this 19th day of April, 1944, between FLORENCE RYAN, a widow, first party, and SILAS M. CAREY and LELA M. CAREY, his wife, second parties,

"WITNESSETH: That whereas first party has this day made and executed her Last Will and Testament bequeathing unto LELA M. CAREY all of her estate of which she may die seized, except One ($1.00) Dollar, bequeathed to Silas M. Carey,

"Now THEREFORE, in consideration of One ($1.00) Dollar and other considerations, it is understood and agreed that Lela M. Carey shall look after the welfare of Florence Ryan

in the event she should need such care and in the event that Lela M. Carey 'should pre-decease Florence Ryan, then Silas M. Carey will look after and care for the said Florence Ryan, should she need such care.

"IN WITNESS WHEREOF the parties hereto have signed this agreement in duplicate this 19th day of April, 1944.

(Sd.) FLORENCE RYAN
First Party
(Sd.) LELA M. CAREY
SILAS M. CAREY
Second Parties"

The will of Florence Ryan, made at the same time and in connection with the contract, also provides:

"I, FLORENCE RYAN, of the City of Centralia, Lewis County, Washington, of legal age, and being of sound and disposing mind and memory and not acting under duress, fraud or undue influence of any person or persons whomsoever, do make, publish and declare this to be my Last Will and Testament in the manner following, that is to say:

"FIRST: I direct that my Executrix hereinafter named, as soon as possible after my death, pay all my just debts.

"SECOND: I give and bequeath unto my son-in-law, SILAS M. CAREY the sum of ONE ($1.00) DOLLAR.

"THIRD: All the rest and residue of my estate whether real, personal or mixed, of whatsoever nature and kind and wheresoever found, I give and bequeath unto my beloved daughter, LELA M. CAREY, provided, however, that in the event my daughter, LELA M. CAREY, predeceases me and the said SILAS M. CAREY, then all the rest and residue of my estate I give and bequeath unto my son-in-law, SILAS M. CAREY. And it is my desire and my intention that my estate be managed and settled without the intervention of the superior court in its jurisdiction of matters probate, and letters testamentary shall not be required to be taken out except to admit my Will to probate.

"FOURTH: I hereby nominate and appoint my beloved daughter, LELA M. CAREY, the Executrix of this my Last Will and Testament, provided, however, that in the event my daughter, LELA M. CAREY, pre-deceases me and the said Silas M. Carey, then I nominate and appoint my son-in-law, SILAS M. CAREY, the Executor of this my Last Will and Testament, and she shall not be required to give bond for the faithful performance of this trust. And I direct that she take charge of all my estate, manage, control and

settle the same without the intervention of the Court having probate jurisdiction.

"LASTLY: I hereby revoke all former Wills made by me.

"IN WITNESS WHEREOF, I, FLORENCE RYAN, have to this, my Last Will and Testament, subscribed my name and affixed my seal in the City of Centralia, Lewis County, Washington, this nineteenth day of April, A.D. Nineteen Hundred and Forty-four.          (Sd.)  FLORENCE RYAN          (SEAL)"

Sometime after the execution of the above instruments, Mrs. Ryan indicated a desire to return to Illinois for a visit. She seemed to especially want to be there over Memorial Day. Plaintiffs helped her arrange the transportation, and took her to the train. Shortly after returning to Illinois, Mrs. Ryan indicated a desire to remain there. She thereupon purchased a small home and agreed to pay for it in installments. Mrs. Ryan arranged for the defendants, George Powell and Noma Powell, to live in the house with her and look after her, and on June 21, 1944, Mrs. Ryan and George Powell and Noma Powell, his wife, entered into the contract hereinbefore referred to, and as a part thereof executed a will. The contract provides:

"Whereas, George Powell and Noma Powell, husband and wife, for a valuable consideration in hand paid, and the further consideration of the execution by Florence Ryan of her Last Will and Testament, duly executed according to law and naming the said George Powell and Noma Powell as the devisees and legatees of all her property, real, personal, or mixed, of which she may die seized, the said George Powell and Noma Powell do hereby undertake and agree to provide said Florence Ryan a suitable home and support for and during her natural life, and to provide for her a suitable burial at the time of her decease.

"Witness our hands and seals, this 21st day of June, 1944, at Marion, Illinois.          NOMA POWELL          (SEAL)
                                                  GEORGE POWELL          (SEAL)
                                                  FLORENCE RYAN          (SEAL)"

The last will and testament provides:

"I, Florence Ryan, of Marion, Illinois, being of sound mind, memory and understanding, do hereby make, publish and declare this my Last Will and Testament, hereby revoking any and all former Wills by me heretofore made.

"FIRST: I hereby direct that all my just debts and funeral expenses be paid as soon as possible after my decease.

"SECOND: I give, devise, and bequeath all my property, real and personal, and wheresoever situate, of which I may die seized and possessed, unto George Powell and Noma Powell, husband and wife, absolutely and forever.

"THIRD: I hereby nominate and appoint George Powell to be my sole Executor of this my Last Will and Testament, and I direct that he serve as such Executor without bond.

"Dated this 21st day of June, 1944.

FLORENCE RYAN"

Florence Ryan continued to live in Marion, Illinois, until the date of her death on November 19, 1944. The will executed by her in Illinois was admitted to probate there, and an exemplified copy of the proceedings was brought to the superior court of the state of Washington for Lewis county, and admitted to probate there. Thereafter, plaintiffs brought this action, seeking specific performance of their contract, and as hereinbefore stated, George Powell, as executor, and George Powell and wife cross-complained, seeking to have the real estate and money hereinbefore referred to adjudged to be a part of the estate of Florence Ryan, deceased, and to have their contract of June 21, 1944, adjudged a valid contract and binding in all respects upon Florence Ryan, deceased, and upon her estate. Cross-complainants also asked that the will of June 21, 1944, in favor of defendants be adjudged to be in full force and effect under the laws of the state of Illinois and elsewhere; that the plaintiffs be enjoined and restrained from transferring or conveying any of the property in their hands; and further that plaintiffs' action be dismissed.

In the depositions of some of defendants' witnesses, statements were made purporting to show that Mrs. Ryan, after her return to Illinois from Washington, informed the witnesses that her daughter Lela had not treated her well, and that she did not want to live with her. There were further statements made in the depositions to the effect that she had not voluntarily given her daughter the property claimed to have been received by Mrs. Carey. There was, of course, further testimony to the effect that the Powells had treated

Mrs. Ryan with every consideration from the time they went to live with her until her death.

The court, upon conclusion of the hearing, and on March 29, 1948, made and entered findings of fact, conclusions of law, and judgment favorable to plaintiffs. The court specifically found that the agreement entered into between plaintiffs and Mrs. Ryan on April 19, 1944, was voluntarily entered into between Florence Ryan and Lela M. Carey and Silas M. Carey, and the same was not obtained by plaintiffs by business duress and compulsion, nor by fraud and deceit. The court further found that plaintiffs did not disable themselves from performing the agreement, and were at all times ready, able and willing to perform the agreement on their part. The court further found that the affirmative defenses and cross-complaint of defendants were not sustained by the evidence. The court further specifically found that during her lifetime Florence Ryan gave outright to her daughter, Lela Carey, all of the money and bonds of which she was possessed, and delivered the same to Mrs. Carey; that ever since that time Mrs. Carey has been in possession of the money and bonds and has exercised dominion and control over them, with the full knowledge, acquiescence, and consent of the decedent during her lifetime; and that such bonds and money constitute no part of the estate of Florence Ryan, deceased.

The court further found that, Florence Ryan, for a good and valuable consideration, having entered into a binding and enforcible contract for the disposition of her estate upon her death, the subsequent contract entered into between Florence Ryan and the defendants Powell on June 21, 1944, was inoperative, and the purported last will and testament executed by the late Florence Ryan in the state of Illinois on June 21, 1944, and admitted to probate in the county court of the state of Illinois January 9, 1945, was ineffective to change the disposition of the property and assets of the estate of Florence Ryan, deceased, upon her death, whether such property be situated in the state of Illinois, Washington, or elsewhere.

A judgment was entered in accordance with the findings and conclusions, specifically enforcing the Carey-Ryan contract as against George Powell, executor of the last will and testament of Florence Ryan, deceased, and against George Powell and Noma Powell, his wife, and it was decreed that, subject to the expenses of administration and rights of creditors, if any, all of the property and assets of Florence Ryan, deceased, wheresoever situated, were the property of Lela Carey, excepting the sum of one dollar decreed to Silas M. Carey. Defendants have appealed from the judgment entered, and make the following assignments of error:

"That the trial court erred,

" (1) In making its findings of fact I to IX, both inclusive.

" (2) In making its conclusions of law.

" (3) In rendering judgment in favor of respondents.

" (4) In granting respondents specific performance of the agreement of April 19th, 1944.

" (5) In denying recovery of the money and property of Florence Ryan, deceased, to George Powell, executor of the last will and testament of Florence Ryan, deceased.

" (6) In refusing to impress a trust on the money and property of Florence Ryan, deceased, in the hands of Lela and Silas M. Carey, in favor of George Powell and Noma Powell, his wife, under the agreement of Mrs. Florence Ryan and George Powell and Noma Powell dated June 21, 1944, as prayed in the cross-complaint of said Powells.

" (7) In admitting testimony by Mrs. Lela Carey of a gift to her by Florence Ryan, a deceased person, in violation of section 1211 Remington Revised Statutes.

" (8) In rejecting the evidence offered by appellants to which exceptions were duly taken, in rejecting the following interrogatories in the depositions hereinafter mentioned and the answers thereto, as circumstantial evidence of the mental attitude, state of mind, and intentions of Mrs. Florence Ryan, and the complaints of Mrs. Florence Ryan, of the treatment she had received from Lela and Silas M. Carey, and that Mrs. Florence Ryan did not acquiesce in the retention of her money and property by the Careys, but continued to claim ownership thereof, such interrogatories and answers being as follows: [Designating certain interrogatories contained in the various depositions.]

"(9) In denying the motion of George Powell, executor of the last will and testament of Florence Ryan, deceased, for new trial.

"(10) In denying the motion of George and Noma Powell for new trial."

The first contention of appellants is that the court erred in refusing to consider certain statements contained in the depositions of several of their witnesses, which statements were claimed to have been made to the deponents of Mrs. Ryan. It is appellants' specific contention that these statements were admissible to show the intention of Mrs. Ryan, her state of mind with reference to her transactions with her daughter and with reference to the matter of her residence in the state of Illinois, and her state of mind in so far as it involved the treatment she had received at the hands of both Mrs. Carey and the Powells. It is appellants' further contention that such statements by the deceased were admissible whether made before or after the claimed transfer of property, or before or after Mrs. Ryan's trip to Centralia and the alleged execution of the contract with plaintiffs.

In support of their contention, appellants cite, among other authority, *Dean v. Oregon R. & Nav. Co.,* 44 Wash. 564, 87 Pac. 824; *Velikanje v. Dickman,* 98 Wash. 584, 168 Pac. 465; *Johnson v. Clark,* 120 Wash. 25, 206 Pac. 914; and *Moen v. Chestnut,* 9 Wn. (2d) 93, 108, 109, 113 P. (2d) 1030.

There is no question in our minds but that the statements in question, claimed to have been made by Mrs. Ryan, were self-serving statements or declarations. It seems to us, as stated by respondents, that we are confronted here with two questions: (a) Are self-serving declarations and statements of a party to an unambiguous written contract, made after the execution of the contract, admissible in evidence to alter, modify, or enlarge the terms thereof? (b) Are the declarations and statements of a testatrix admissible in evidence to show her intention to be different from that expressed in her last will and testament voluntarily executed?

It should be kept in mind that there is no proof that Mrs. Ryan was acting under duress, undue influence, or business compulsion at the time she executed the contract with Mrs. Carey or the will of April 19, 1944, nor is there any evidence that such contract and will were obtained by fraud or deceit, and the trial court expressly so found.

While appellants seem to admit that the statements above referred to are not offered for the purpose of determining their truth or falsity, but only for the purpose of showing Mrs. Ryan's state of mind, it is impossible for us to make the distinction in this case. We quote from the memorandum decision of the trial court, who was of the opinion that to admit the statements claimed to have been made by Mrs. Ryan, and the self-serving written declarations found among her effects, would be a clear violation of the hearsay rule. The decision states:

"In this instance a substantial amount of property was delivered to the daughter, one of the plaintiffs herein, and a contract and will made with the plaintiffs, and now by hearsay statements the defendants wish to show that Florence Ryan never intended to deliver the property, that she did not intend to live in Centralia, and did not intend to do anything kindly toward her daughter in any regard. Thus to admit these hearsay statements, even though defendants insist they are only offered for the purpose of showing *state of mind,* they expect thereby to prove sufficient facts to indicate that the matters which the testimony shows were actually done were never in fact intended and could not have been intended in her state of mind. I must conclude that the hearsay statements are not admissible; and they have not been considered by me in arriving at my conclusions." (Italics ours.)

We think the rule applicable here is stated in the case of *O'Connor v. Slatter,* 46 Wash. 308, 89 Pac. 885, where, after discussing Bal. Code, § 5991 (now Rem. Rev. Stat., § 1211 [P.P.C. § 38-3]) we stated:

"The statute does not, of course, change the general rule of law that self-serving declarations made out of the presence of the other party are inadmissible. The deceased, if living, could not testify to self-serving declarations made to third parties, nor could his representatives prove such

declarations in a case like this, and the appellant expressly disavows any such attempt."

See, also, *McFarland v. Department of Labor & Industries,* 188 Wash. 357, 363, 62 P. (2d) 714, where we stated:

"However, Rem. Rev. Stat., § 1211 [P. C. § 7722] does not change the general rule of law that self-serving declarations made out of the presence of the other party are not admissible. *O'Connor v. Slatter,* 46 Wash. 308, 89 Pac. 885."

In the case of *Levy v. Simon,* 119 Wash. 179, 186, 205 Pac. 426, we stated:

"Other errors claimed relate to the exclusion of letters written by the deceased, and of declarations made by the deceased, and of bank statements of the deceased in a bank at Fairbanks, Alaska. None of the offered evidence was admissible. All of it was of the character of self-serving declarations. It is almost the universal rule that the declarations of a decedent in favor of his own interest cannot be admitted, and only those declarations which are against his interest can be admitted."

We are of the opinion that Justice Cardozo, in the case of *Shepard v. United States,* 290 U. S. 96, 78 L. Ed. 196, 54 S. Ct. 22, clearly points out the distinction where evidence of a state of mind is admissible and inadmissible. While the cited case was a murder case, the type of testimony therein referred to was the same as in the instant case. We quote from the opinion:

"Thus, in proceedings for the probate of a will, where the issue is undue influence, the declarations of a testator are competent to prove his feelings for his relatives, but are incompetent as evidence of his conduct or of theirs. . . . So also in suits upon insurance policies, declarations by an insured that he intends to go upon a journey with another, may be evidence of a state of mind lending probability to the conclusion that the purpose was fulfilled. *Mutual Life Ins. Co. v. Hillmon, supra* [145 U. S. 285]. The ruling in that case marks the high water line beyond which courts have been unwilling to go. It has developed a substantial body of criticism and commentary. Declarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored."

Had there been any proof in this case that Mrs. Ryan, at the time she executed the contract and will in Centralia, was acting under duress, undue influence, or business compulsion, or that she was mentally incompetent, or that she was induced by fraud or deceit to sign such instruments, then her statements made to the witnesses concerning the matter under discussion might have been admissible to show her frame of mind and her attitude toward her daughter, Mrs. Carey. But there was no such showing, and the statements were, in our opinion, therefore inadmissible.

We have examined the authority cited by appellants to sustain their contention that both the oral and written self-serving declarations of Mrs. Ryan were admissible and entitled to be considered by the court for the purpose hereinbefore stated, and it is our opinion such authority is not applicable to the facts in the instant case. We cannot discuss all of appellants' cases, but we shall refer to four of them as typical.

The case of *Dean v. Oregon R. & Nav. Co.*, 44 Wash. 564, 87 Pac. 824, did not involve any contract. It was an action for damages for causing the death of a minor child. It was contended by the appellant (the railroad) that when the boy left his parents' home and enlisted in the army, he became emancipated, and that consequently the parents could not maintain an action. The question was as to whether or not certain letters written by the deceased and certain conversations had by him, wherein he expressed an intention to return home, were admissible. We held the letters and conversations were admissible.

We are unable to find anything stated in *Johnson v. Clark,* 120 Wash. 25, 206 Pac. 914, which would be applicable here. The opinion states:

"It is contended [by appellant] that the court permitted Johnson [respondent] to testify to transactions had by him with Mrs. Anderson [decedent] and to statements made to him by her, contrary to § 1211 of the code (Rem; P. C. § 7722). The brief does not point out the specific instances where the rule is claimed to have been violated, and in our reading of it we find none that is clearly apparent. . . .

Mrs. Anderson was present at all times during the perform- ance, and it was her duty at that time to complain and re- pudiate the contract if she concluded it was being breached. Failing in this, she herself could not complain after the change in conditions, and her representative has no higher right."

The first headnote in *Velikanje v. Dickman,* 98 Wash. 584, 168 Pac. 465, is, in our opinion, sufficient to show the differ- ence in the factual situation presented in that case. We quote:

"Prior conversations, while not competent to show an oral agreement different from a written contract, are ad- missible upon an issue as to an oral agreement to devise real estate in consideration of services, as tending to show a continuous grateful attitude upon the part of the decedent."

We are of the opinion that when the case of *Moen v. Chestnut,* 9 Wn. (2d) 93, 113 P. (2d) 1030, is given careful consideration, and the discussion of the hearsay rule as contained therein analyzed, it will be apparent that there is nothing in that opinion which would require a different conclusion in the instant case than that reached by the trial court.

It is contended by appellants that the testimony of attorney C. D. Cunningham was inadmissible, and hence respondents failed to prove the alleged contract and that the execution of the will was part of the consideration for the contract. Appellants base their contention principally upon Rem. Rev. Stat., § 1214 [P.P.C. § 38-9], paragraph No. 2, which provides:

"An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment. . . ."

Before discussing the legal phase of this question, we should have in mind the material facts testified to by Mr. Cunningham.

"Q. For whom did you perform a service, if anyone? A. Well, the services [drawing will and contract] I per- formed, I performed for Mrs. Ryan and for the Careys, both

of them. Q. While they were both present there at your office? A. Yes."

"Q. And these conversations which you had with Mrs. Ryan, were they made in the presence of the Careys? A. They were made in my private office with the door open and subsequently made in the presence of the Careys."

Under the above situation, it is our opinion the rule of privilege does not apply. *In re Quick's Estate,* 161 Wash. 537, 547, 297 Pac. 198; *Billias v. Panageotou,* 193 Wash. 523, 76 P. (2d) 987; *Cummings v. Sherman,* 16 Wn. (2d) 88, 132 P. (2d) 998.

Mr. Cunningham was not, under Rem. Rev. Stat., § 1211, barred from testifying because of his interest, for he testified that, prior to the commencement of this action, he had no contract with respondents as to what his fee would be; that he had no agreement for a contingent fee; and that it was understood that a charge would be made for his services at the conclusion of the case.

In *Swingley v. Daniels,* 123 Wash. 409, 414, 212 Pac. 729, we stated:

"Nearly all of the authorities hold that, where there are no arrangements made for attorney's fees and only a reasonable fee is to be or can legally be, charged, there is no such interest as precludes him from testifying concerning transactions with a deceased person, and the fact that the attorney may expect to charge more in the event he wins than he would if he lose does not alter the rule."

See, also, *In re Hilbert's Estate,* 14 Wn. (2d) 475, 478, 128 P. (2d) 647.

Some question was raised as to the propriety of Mr. Cunningham testifying, inasmuch as he had drawn the will and contract, and was one of the attorneys for respondents. Appellants cite *In re Torstensen's Estate,* 28 Wn. (2d) 837, 184 P. (2d) 255. Upon the last-cited case being brought to his attention, Mr. Cunningham withdrew as an attorney in in this case. We do not think the facts in the instant case, in so far as the acts of Mr. Cunningham are concerned, are comparable with the facts in the *Torstensen* case, and we

are of the opinion it was not improper for Mr. Cunningham to testify in this case.

■ It is next contended by appellants that the burden was on respondents to show that they dealt fairly and justly with Mrs. Ryan in their transactions with her, citing *Manning v. Alcott*, 137 Wash. 13, 241 Pac. 287, and *Gardner v. Frederick*, 96 Wash. 324, 165 Pac. 85. The *Gardner* case grew out of the alleged failure of the defendants to support and care for the plaintiff in accordance with the terms of a contract made between the parties for that purpose. The general rule, and the rule applicable in this state, is stated as follows:

"The rule in this state, as well as the great weight of authority, is to the effect that, where an aged parent conveys property to a son or daughter, or other person, in consideration of future support and care, and there is a willful and wrongful withholding of such support and care, in equity the contract may be rescinded, or, if rescission cannot be had, an action for damages will lie."

It is apparent, from a reading of the two cases above cited, that before there is any duty to show a purity of the transaction, there must first be shown a breach of the contract to support or a willful intent not to carry out the contract.

Without the hearsay evidence which the trial court rightfully excluded, there is no showing of any unfair dealing by respondents in this case, and no showing but that Mrs. Carey treated her mother with the utmost kindness and respect, nor is there any showing other than to the effect that Mrs. Carey performed the contract to the best of her ability, having in mind the best interest of her mother.

The trial court specifically found that Mrs. Ryan, during her lifetime, gave outright to her daughter, Lela Carey, all the money and bonds of which she was possessed, delivering the same to Mrs. Carey, and that ever since Mrs. Carey has been in possession of such money and bonds, and has exercised dominion and control over the same, as her own personal property, with the full knowledge, acquiescence, and consent of the decedent during her lifetime.

■ Appellants next contend that the trial court erred in holding that Mrs. Ryan made a gift of the above property to Mrs. Carey, and that there was no competent evidence of a completed gift. We think there was sufficient evidence to sustain the court's finding of a completed gift to Mrs. Carey. It appears from the deposition of Mrs. Mary P. Johnson, of Marion, Illinois, that Mrs. Ryan told her before Mrs. Carey could sell it or get an agent to take care of it going to deed her property over to her daughter, and that Mrs. Carey could sell it or get an agent to take care of it for her. The deposition further states that Mrs. Ryan told the witness that she was going home with her daughter; and that Mrs. Ryan did go to Washington with her daughter.

Luke Johnson, of Marion, also stated that Mrs. Ryan told him before Mrs. Carey went to Illinois that she, Mrs. Ryan, was going to transfer all her property to her daughter; that Mrs. Ryan told him if he desired to purchase any part of the property he would have to wait until Mrs. Carey arrived, as any transaction would have to be made with her. The witness stated that later he purchased four houses and six lots, that all his dealings were with attorney John Reid and Mrs. Carey, and that he never talked to Mrs. Ryan after she had introduced him to Mrs. Carey.

We do not find anyone contradicting the testimony of the Johnsons, and so it would appear that Mrs. Ryan intended to give her property to Mrs. Carey before the latter arrived in Marion. It further appears that these intentions were carried out after Mrs. Carey arrived in Marion, for Mrs. Ryan did deed all of her property to Mrs. Carey. Mrs. Carey sold the property, and the proceeds went to her. The furniture was also sold by Mrs. Carey and the funds retained by her. The bonds were delivered to Mrs. Carey and by her cashed at the Illinois bank. The proceeds from the sale of the property and the cash was turned in to the Illinois bank, and cashier's checks were delivered to Mrs. Carey, all with the knowledge, consent and approval of Mrs. Ryan. Mrs. Carey thereafter exercised complete control over all of this property. We also have the statement of Mr. Cun-

ningham that Mrs. Ryan, while in his office, stated that she had given everything to Lela.

As to the rule relative to a gift from a parent to a child, see 39 Am. Jur. 742, § 97; 20 R. C. L. 588, § 5.

■ Appellants next contend that the Ryan-Carey contract and will are invalid and of no force or effect. They contend, first, that it does not appear from the contract that Mrs. Ryan agreed to leave her property to the Careys. It is further argued that Mrs. Ryan was not a free agent when she executed the contract and will, but was governed by fear of the Careys; that there was no consideration for the agreement to leave her property to the Careys.

Appellants also question the admissibility of the testimony of Mr. Cunningham. In the course of his testimony, Mr. Cunningham stated that Mrs. Ryan told him she had given everything to Lela, and after a motion interposed by opposing counsel, his answer continues:

"A. (continuing) 'But' she says, 'you can't tell what us old people are going to do, I may have considerable more.' And she laughed when she said it. And she said, 'I want this contract so in the event Lela dies, something happens to Lela, that Silas' as she called him, 'will look after me.' And she wanted the will made as a part of the consideration, although she didn't so express it. She wanted the will made along with this contract. Now that was in effect what she told me."

We have held that the testimony of Mr. Cunningham was admissible, and we think plainly indicates that there was a sufficient consideration for the contract. See *Alexander v. Lewes*, 104 Wash. 32, 175 Pac. 572.

There is no contention that Mrs. Ryan was not mentally competent at the time she made the will and entered into the contract.

We are of the opinion there was ample evidence to sustain finding of fact No. 9, as made by the trial court, which states:

"That the said Florence Ryan, having entered into a binding and enforceable contract for a good and valuable consideration for the disposition of her estate upon her death, simultaneously with her will and testament, dated

the 19th day of April, 1944, and pursuant to said contract devised and bequeathed all of her property to her daughter, Lela Carey, with the exception of One Dollar ($1.00) which she bequeathed to the plaintiff, Silas M. Carey, the subsequent contract entered into with the said Florence Ryan and the defendant, George Powell and Noma Powell, on the 21st day of June, 1944, became inoperative and the purported Last Will and Testament executed by the late Florence Ryan in the State of Illinois on the 21st day of June, 1944, and admitted to probate in the county court of the State of Illinois in and for the County of Williamson, on the 9th day of January, 1945, was ineffective to change the disposition of the property and assets of the estate of Florence Ryan, deceased, upon her death whether situated in the States of Illinois, Washington or elsewhere as against said answering defendants."

In view of our conclusions herein, it becomes unnecessary to discuss the Powell contract and will, for the reason that if the Carey contract and will are effective and binding, it was legally impossible for Mrs. Ryan to enter into a valid and binding contract with the Powells.

In view of the conclusions reached, we do not deem it necessary to discuss the question raised relative to the right of George Powell to appear herein, both as executor and as asserting an individual claim against the estate.

We appreciate that, this being an equity case, findings are not necessary. We also appreciate that in an equity case we have an independent duty to examine the evidence and determine what findings should have been made. We have stated, however, that where the evidence is conflicting or appears to be evenly balanced, the findings of the trial court usually will not be disturbed. *Columbia Lbr. Co. v. Bush*, 13 Wn. (2d) 657, 666, 126 P. (2d) 584.

We are satisfied, after an examination of the record, that there was ample competent evidence in this case to sustain the findings of fact, conclusions of law, and judgment entered by the trial court, and that such judgment should be, and it is, affirmed.

Beals, Steinert, Mallery, and Hill, JJ., concur.