MUNICIPIO DE RÍO PIEDRAS, peticionario y apelado, *v.* RÍO PIEDRAS DEVELOPMENT CO., INC., opositora y apelante.

Núm. 9808.—*Sometido:* Enero 10, 1949. *Resuelto:* Febrero 24, 1949.

*E. T. Fiddler, José G. González, Tomás I. Nido y Mariano Canales,* abogados de la apelante; *Rubén Gaztambide Arrillaga,* abogado del apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

En 1947 el Municipio de Río Piedras radicó ante la corte de distrito una información de dominio interesando la inscripción a su nombre de cuatro solares de 612, 523, 676 y 487 metros, valorados en $9,000, $8,000, $10,000 y $10,000, respectivamente. Alegó el municipio que adquirió estos solares por "compra o permuta" de doña María Asunción Córdova en 1852; que no están inscritos en el registro; y que ha estado en posesión de los mismos quieta, pública y pacíficamente en calidad de dueño durante noventa y seis años.

La Río Piedras Development Co., Inc., radicó una oposición alegando que es dueña de los cuatro solares aquí envueltos. Conviene con el municipio en que la señora Córdova era dueña de los terrenos en controversia allá para el 1850. Pero sostiene que es ella y no el municipio la sucesora de dicha señora. Alega que estos solares formaban parte de una finca de noventa y seis cuerdas perteneciente a la señora Córdova y que se vendió a Manuel González Fernández en 1861; que luego de éste hacer varias segregaciones de la misma, sus herederos adquirieron el remanente a título de herencia; que como resultado de segregaciones posteriores hechas por los herederos de González, la finca se redujo a nueve cuerdas que incluyen los cuatro solares en controversia; que las nueve cuerdas fueron adquiridas en 1947 por la Río Piedras Development Co., Inc., por escritura otorgada por los herederos de González.

El caso fué visto ante la corte de distrito sin que existiera controversia sustancial en cuanto a los hechos relevantes. El municipio ha estado en posesión de estos cuatro solares desde allá para el 1850. Adquirió la posesión en virtud de un Acta de la Junta Municipal de Río Piedras de fecha 31 de octubre de 1850.(¹)  Al entrar el municipio en posesión de la finca, la usó para un cementerio. Este uso se fué abandonando gradualmente. En 1942 ya no quedaban rastros del cementerio. Se construyeron dos

(¹) El Acta dice así:

"En Río Piedras, a los treinta y un días del mes de octubre de mil ochocientos cincuenta se reunieron en sesión extraordinaria los señores de la Junta Municipal que al margen se anotan y el señor Presidente hizo presente a la Corporación que pendiente de rendirle al Superior Gobierno de esta Isla el último acuerdo de esta Junta celebrado en dieciséis de los corrientes relativo a la recomposición del Cementerio de este pueblo ha recibido una comunicación del Excmo. señor Gobernador y Capitán General, fecha diecicoho del actual en que *G. E. se sirve disponer la traslación del Cementerio a otro punto del terreno de Doña María Asunción Córdova,* según lo dispuesto por su Gobierno en trece de marzo del pasado año de mil ochocientos cuarenta y nueve recomendando se active este negocio para que cuanto antes tenga efecto la traslación referida. En su virtud y presente Doña María Asunción Córdova, se puso de acuerdo, la

calles que dividieron la finca en los cuatro solares aquí envueltos. En 1946 el municipio ofreció los solares en pública subasta.

Basada en estos hechos, la corporación sostiene ante la corte de distrito que tiene título sobre los cuatro solares y ahora tiene derecho a la posesión de los mismos. Su razonamiento sobre este punto puede sintetizarse como sigue: El Acta de 1850 demuestra que la señora Córdova donó estos solares al municipio para ser consagrados al uso público de cementerio. El municipio no usa ya los mismos para cementerio. La jurisprudencia sobre consagración al uso público es que el título de las tierras así dedicadas siempre permanece en manos del donante; si desaparece el uso público para el cual se consagra la propiedad, la posesión de los terrenos revierte al donante o a su sucesor. Toda vez que la corporación es la sucesora de la donante, la señora Córdova, aquélla tiene el título sobre los cuatro solares y tiene derecho a la posesión de los mismos por haber dejado de usarlos como cementerio.

Sin embargo, la corte de distrito resolvió que la señora Córdova no había hecho consagración alguna de los solares pertenecientes a ella para el uso público en calidad de cementerio. Por el contrario, resolvió que la transacción mediante la cual el municipio obtuvo la posesión de estos terrenos allá para el 1850, fué una permuta corriente entre

Corporación con dicha señora, conviniendo en que *doña Asunción cede a la Corporación tres ʼcuartas de cuerda del terreno de su propiedad para situarse el nuevo Cementerio en el punto de su posesión que diga la Junta como más apropiado, y por única recompensa de esta donación recibirá el local que en la actualidad ocupa el Cementerio existente.* Procedió luego la Corporación a acordar que se encargue a don Miguel Delgado, como inteligente en el ramo, a que forme el plano, proyecto y presupuesto del nuevo cementerio con arreglo a las instrucciones que deberá recibir del vocal don R. González, encargado para el efecto por esta Junta recomendándole la mayor brevedad a fin de que queden cumplimentados los deseos del Superior Gobierno a quien se dará cuenta con copia de este acuerdo. Con lo que se levantó la sesión, firmando el señor Presidente y Caballero Síndico y también doña María Asunción Córdova, por ante mí de que certifico. —Arturo O'Neill —Manuel L. García, Síndico —Ma. Asunción Córdova —Carlos Andino, Sec.'' (Bastardillas nuestras).

éste y la señora Córdova a tenor con el artículo 1428 del Código Civil, ed. de 1930. En consecuencia resolvió que el municipio tenía un título incondicional sobre estos solares y dictó sentencia a su favor.

■ ■ La corporación ha apelado y señala tres errores. En ellos renueva su contención al efecto de que en esta jurisdicción la ley es que el título a la propiedad consagrada al uso público siempre permanece a favor del donante y que el abandono del uso público por el cual se consagró la propiedad, crea un derecho a favor del donante o de su sucesor a readquirir la posesión del terreno.[2] Es innecesario examinar esta cuestión de derecho. Para poderla considerar, primeramente tendríamos que convenir con la apelante que en 1850 la señora Córdova había dedicado como cuestión de hecho estos solares a uso público para un cementerio. Pero creemos que la corte de distrito actuó correctamente al rechazar esa contención y al resolver que la transacción de 1850 fué una permuta, y no una consagración al uso público.

Sintetizamos el argumento de la apelante al efecto de que la transacción de 1850 fué una consagración al uso público en este párrafo y en los tres siguientes. La referencia hecha en el Acta de 1850 para que se trasladara el cementerio a "otro punto del terreno de Doña María Asunción Córdova" demuestra que el cementerio que ya existía radicaba en su propiedad. Esto quiere decir que la señora o su antecesor habíale permitido al municipio usar el local para un cementerio sin desprenderse jamás del título. Toda vez que la señora Córdova era dueña de los terrenos en que enclavaban el viejo y el nuevo cementerio, la transacción hecha en 1850 no pudo haber sido una permuta. El artículo 1428 del Código Civil dispone que "La permuta es un con-

---

[2] Cf. McQuillan, *Municipal Corporations*, Ed. Rev., págs. 820–21, págs. 846–49; *Annotations*, 47 A.L.R. 1172, 1183; 70 A.L.R. 564; *Johnston* v. *Medina Improvement Club, Inc.*, 116 P.2d 272 (Wash., 1941); *Tracy* v. *Bittle*, 112 S.W. 45 (Mo., 1908); *Prall* v. *Burckhartt*, 132 N.E. 280 (Ill., 1921); *Portland Baseball Club* v. *City of Portland*, 18 P.2d 811 (Ore., 1933).

trato por el cual cada uno de los contratantes se obliga a dar una cosa *para recibir otra."* (Bastardillas nuestras). Pero la señora Córdova nada recibía, ya que era dueña de los terrenos en que enclavaban el presente y el futuro cementerios. Por consiguiente donaba estos solares para consagrarlos al uso público y no a cambio de terrenos de los cuales ella ya no era dueña.

El Acta de 1850 dice que doña María Asunción Córdova *cede* al municipio tres cuartas partes de una cuerda para el nuevo cementerio, recibiendo como única recompensa por esta *donación* el *local* que ocupaba el cementerio existente. Al recibir el local del cementerio ya existente, la señora Córdova no recibía los terrenos en que éste estaba enclavado. Éstos ya le pertenecían. Ella sólo ganaba acceso al terreno que se venía utilizando para cementerio en su propia finca. Y la llamada "recompensa" era inefectiva y fué innecesaria, toda vez que ella podía utilizar los terrenos, por pertenecer a ella, una vez que el municipio abandonara el viejo cementerio.

El Acta de 1850 habla de "cesión" y de "donación". Estas palabras envuelven un concepto jurídico diferente a la "permuta". Si las partes hubieran tenido en mente efectuar una permuta, hubieran usado la terminología relativa a éstas. El lenguaje que emplearon revela una donación o consagración al uso público para un cementerio y no una permuta.

Originalmente la señora Córdova era dueña de una finca de noventa y seis cuerdas en la que radicaban ambos cementerios. Cuando la vendió a Manuel González Fernández, no dedujo o segregó la porción utilizada por el municipio para el cementerio. Tampoco se hizo inscripción alguna a favor del municipio de una segregación de estos solares. Y González pagó las contribuciones sobre estos terrenos durante los años posteriores. La señora Córdova

por tanto nunca se desprendió del título a estos cuatro solares: éstos fueron meramente consagrados por ella al uso público en calidad de cementerio.

Hemos examinado cuidadosamente los argumentos que anteceden, pero no los creemos convincentes. La apelante no ofreció prueba directa de que los terrenos en que enclavaba el viejo cementerio durante un número de años con anterioridad al 1850 todavía pertenecían a la señora Córdova luego de construirse el mismo. Descansa casi totalmente en la frase un poco ambigua hallada en el Acta de 1850 al efecto de que el cementerio sería trasladado a "otro punto" en su propiedad. Esto, por sí solo, no es suficiente para establecer afirmativamente que el terreno en que el cementerio estaba localizado, pertenecía todavía a la señora Córdova luego de construirse el cementerio anterior. Este lenguaje en el Acta, empleado imprecisamente por un lego, es de igual manera consistente con la inferencia de que el cementerio anterior había estado enclavado en terrenos que originalmente, pero no ya, pertenecían a la señora Córdova. Para ser aplicable el razonamiento de la apelante, tendría en primer lugar que demostrar afirmativamente que la señora Córdova todavía era dueña de los terrenos en que enclavaba el viejo cementerio, cuando surgió la cuestión de construir un nuevo cementerio en 1850. No podemos concluir que esto fué inequívocamente demostrado por el lenguaje del Acta de 1850.

Contrario a la contención de la apelante, creemos que es significativo el empleo de la palabra "recompensa" en el Acta de 1850. Si el municipio y la señora Córdova meramente convenían en cambiar el local del cementerio de una parcela de su propiedad, ya consagrada al uso público, a otra parcela a consagrarse al mismo uso público, no hubiera habido necesidad de usar el lenguaje de recompensa. El que ella iba a ser "recompensada" con el viejo terreno a cambio del terreno para el nuevo cementerio, fortalece nues-

tra conclusión de que el viejo nunca perteneció, o por lo menos no pertenecía ya, a dicha señora. Si el viejo terreno le pertenecía, no lo hubiera recibido como "recompensa".

De necesitarse algo más, existen otros records del municipio que envuelven esta misma transacción que demuestran ésta fué una permuta y no una donación para consagrarla al uso público. Del expediente surge que en 1849 el municipio llegó a la conclusión que el sitio más apropiado para la construcción del nuevo cementerio, era una parcela de terreno perteneciente a la señora Córdova, que sería comprada o expropiada. También dice el expediente que el 8 de octubre de 1850 la señora Córdova se acercó al municipio con miras a facilitar el cambio, hablando de que "se active este negocio". En el Acta del 31 de octubre de 1850, se repite la frase "se active este negocio". Generalmente uno no usa la palabra "negocio" en relación con una donación.

Finalmente, existe un Acta de 1854 que demuestra que se denegó una solicitud de la señora Córdova para que se paralizaran las obras del nuevo cementerio "porque *habiéndose comprometido* en octubre de 1850 con la Junta de Río Piedras a ceder terreno de su propiedad para que se construyere el cementerio, dejando a elección de la Junta el punto de su finca en que hubiera de situarse *no le es lícito declinar ahora* su compromiso si no pasa de tres cuartas partes de cuerda el terreno que se le ocupa en *compensación* del que tiene hoy el camposanto antiguo que este *quedan a su disposición;* Y lo comunico a V. para su inteligencia y efectos correspondientes, previniéndose se proceda a continuar la obra del Cementerio que se había suspendido a consecuencias del escrito de doña Asunción Córdova. (Bastardillas nuestras).

Esta oposición de la señora Córdova en 1854 tiende a refutar la teoría de consagración y a demostrar que la verdadera naturaleza de la transacción de 1850 fué un contrato de permuta que ella en 1854 trataba de dejar sin efecto.

Aquí, lo mismo que a través de todo el expediente, las Actas hablan de "recompensa" en relación con el "negocio". Esto difícilmente es la terminología a emplearse en una donación para consagrar al uso público.

La apelante sostiene que la referencia en el Acta de 1850 a la palabra "donación" indica una consagración. Pero esa palabra no puede extraerse del contexto. El Acta habla de "única *recompensa* de esta donación...". Y el Acta en su totalidad, junto a la historia de la transacción según surge ésta de todo el expediente, no deja lugar a dudas de que ésta fué un negocio en el cual las partes permutaron tierras pertenecientes a cada una de ellas.

■ Además, aun cuando supongamos, según alega la apelante, que con anterioridad al Acta de 1850 el municipio era dueño sólo del "local" y no del "terreno" en el cual entonces enclavaba el viejo cementerio, esto fué suficiente causa o consideración para un contrato de permuta mediante el cual el municipio vino a ser el dueño incondicional del "terreno" para el nuevo cementerio en consideración de su renuncia al viejo "local" a favor de la señora Córdova.

■ Nuestra conclusión es que el Acta de 1850 se refería a una permuta entre el municipio y la señora Córdova como una transacción comercial corriente por la cual el municipio obtuvo el título a los cuatro solares en controversia sin trabas de ninguna especie. Por consiguiente el municipio tenía derecho a usar estos solares para cualquier otro propósito o venderlos al dejarlos de usar para cementerio.

*La sentencia de la corte de distrito será confirmada.*